Hubert H. Kuo (SBN 204036)
    hkuo@ardentlawgroup.com
Jennifer C. Berschauer (SBN 203977)
    jberschauer@ardentlawgroup.com
ARDENT LAW GROUP, P.C.
4340 Von Karman Ave., Suite 290
Newport Beach, CA 92660
Tel: (949) 299-0188
Fax: (949) 299-0127
Attorneys for  Defendants/Counterclaimants ARTIST
INTERNATIONAL CO., LTD., and ERAS SPORTING CO., LTD.,
Defendants LI-WEI HOU, HONG-WEN CHEN, erroneously sued as
HUNG-WEN CHEN, and *specially appearing* on behalf of LI-MING
HSU

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADDADAY, INC., a Delaware corporation, and VICTOR YANG, an individual<br><br>Plaintiffs,<br><br>v.<br><br>ARTIST INTERNATIONAL CO., LTD., a foreign corporation, ERAS SPORTING CO., LTD., a foreign corporation, SUZHOU AIDISITE TRADING CO., LTD., a foreign corporation, LI-MING HSU, an individual, LI-WEI HOU, an individual, HUNG-WEN CHEN, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-05525-AB (PLAx)<br>Assigned for all purposes to:<br>Hon. Judge Andre Birotte Jr.<br>Courtroom 7B<br><br>**DECLARATION OF LIN "EVA" CHEN IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND AN ORDER FOR ISSUANCE OF A WRIT OF ATTACHMENT**<br><br>**Hearing:**<br><br>**Date: May 6, 2022**<br><br>**Time: 10:00 a.m.**<br><br>**Courtroom 7B** |
| ARTIST INTERNATIONAL CO., LTD., a Belize company, ERAS SPORTING CO., LTD., a Taiwanese company,<br><br>Counterclaimants,<br><br>v.<br><br>ADDADAY, INC., a Delaware corporation, and VICTOR YANG, an individual, and ROES 1-10, | |

inclusive,

                Counter-Defendants.

I, Lin "Eva" Chen, declare:

**1.**      I am the sales manager of Counterclaimant ERAS SPORTING CO., LTD. ("ERAS"), a Taiwanese corporation. In my position at ERAS, I am responsible for the bookkeeping of customers' account and open balance, including the matters with Counter-Defendants ADDADAY, Inc. ("ADDADAY") and VICTOR YANG ("YANG").

**2.**      I am also the sales manager of Counterclaimant ARTIST INTERNATIONAL CO., LTD. ("ARTIST"), a Belize company. In my position at ARTIST, I am responsible for the bookkeeping of customers' account and open balance, including the matters with Counter-Defendants ADDADAY and YANG.

**3.**      I make this declaration in support of Counterclaimants' Application for Right to Attach Order and Order for Issuance of a Writ of Attachment. I have personal knowledge of the facts set forth in this Declaration, and if called to testify under oath, could and would testify competently thereto.

**4.**      At all relevant times herein, I have been an authorized custodian of the books and records of ERAS and ARTIST pertaining to ADDADAY's invoices and accounts receivables. I have custody and control of the records, and I make those records part of this Declaration which is based upon such books and records and upon information which I have personally reviewed and find such records and documents to reflect. Any such record or document was prepared in the ordinary course of business of ERAS and ARTIST and by persons employed by ERAS and ARTIST who had personal knowledge of the event being recorded and who had a business duty to accurately record such event.

**Stock Repurchase Agreement**

2

5. On or about September 2, 2020, ERAS, YANG, and ADDADAY entered into a Purchase Agreement and Mutual Release ("Stock Repurchase Agreement"), where ERAS sold 300,000 shares of common stock in ADDADAY to YANG, for $500,000.00. Attached as **Exhibit "1"** is a true and correct copy of the Stock Repurchase Agreement.

6. Pursuant to the Stock Repurchase Agreement, ERAS was to transfer all shares to YANG at the execution of the Stock Repurchase Agreement, evidenced with an assignment of stock. ERAS executed the assignment and transferred all of its 300,000 shares of common stock to YANG in September 2020.

7. Further pursuant to the Stock Repurchase Agreement, YANG agreed to pay ERAS in accordance with a promissory note in favor of ERAS in the amount of $500,000.00. YANG breached the Stock Repurchase Agreement by failing to pay ERAS in accordance with his promissory note.

**Note for Stock Repurchase**

8. Pursuant to the Stock Repurchase Agreement, YANG was to issue a promissory note to ERAS as he did not have sufficient funds to pay ERAS. YANG did issue a promissory note (the "Note for Stock Repurchase") in favor of ERAS in the amount of $500,000.00. Pursuant to the Note for Stock Repurchase YANG was to pay ERAS in one lump sum payment, in the amount of $500,000.00, on or before February 1, 2021. Attached as **Exhibit "2"** is a true and correct copy of the Note for Stock Repurchase issued by YANG.

9. YANG failed to pay ERAS by February 1, 2021 as required by the Note for Stock Repurchase Agreement.  After multiple conferrals with YANG, YANG started making payment for the stock repurchase on March 11, 2021. However, YANG made the payments in small amounts rather than a lump sum. From March 11, 2021 to June 15, 2021, YANG paid to ERAS for the stock repurchase in the amount of $246,500.00.

3

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

**10.**     After June 2021's payment, YANG ceased all payments and still owes ERAS $253,500.00 for the stock repurchase.

**11.**     To date, YANG has not paid any of the outstanding amounts set forth herein, and is still owing ERAS $253,500.00 for the stock repurchase.

**Debt Guarantee Agreement**

**12.**     ARTIST is an affiliate of ERAS, and ARTIST is also a supplier of ADDADAY. From March 2019 to August 2020, ADDADAY ordered goods from ARTIST and incurred payment obligations totaling $1,491,764.70 ("ARTIST's Debt") to ARTIST. To facilitate the execution of the Stock Repurchase Agreement, YANG agreed to execute certain notes and a personal guarantee to the ARTIST's Debt. As a result, on or about September 2, 2020, ADDADAY, YANG, ARTIST, and ERAS entered into an Agreement on Debt Guarantee and Sale of Equity of Addaday, Inc. ("Debt Guarantee Agreement"). Attached as **Exhibit "3"** is a true and correct copy of the Debt Guarantee Agreement.

**13.**     Pursuant to the Debt Guarantee Agreement, after ERAS entered into the Stock Repurchase Agreement and transferred its stocks in ADDADAY to YANG, ADDADAY would pay ARTIST the ARTIST's Debt. Since ADDADAY did not have sufficient funds at the time, ADDADAY was to issue a promissory note, and YANG was to also issue a personal guarantee, for ARTIST's Debt.

**Guarantee by ADDADAY**

**14.**     As such, on or about September 2, 2020, ADDADAY issued a promissory note ("Guarantee by ADDADAY") in the amount of $1,491,764.70, in favor of ARTIST.  According to this Guarantee by ADDADAY, ADDADAY was to pay ARTIST in sixteen equal monthly installments, starting October 1, 2020, in the amount of $93,235, and the last payment of $93,239.70. Attached as **Exhibit "4"** is a true and correct copy of the Guarantee by ADDADAY.

**15.**     Although ADDADAY was supposed to start making monthly payments on October 1, 2020, ADDADAY did not make the first payment until

4

November 16, 2020. From November 16, 2020 to March 9, 2021, the total payments made by ADDADAY was $374,705.00. Since then, ADDADAY ceased making any further payments for the Debt Guarantee Agreement. The unpaid balance is $1,117,059.70.

## Guarantee by YANG

16.     In addition to the Guarantee by ADDADAY, YANG executed a personal guarantee of promissory note ("Guarantee by YANG") on or about September 2, 2020, where YANG guaranteed ADDADAY's obligations to the ARTIST's Debt, where YANG absolutely, unconditionally, and irrevocably guaranteed the prompt payment by ADDADAY under the Guarantee by ADDADAY. If a default were to occur in the payment obligations under the Guarantee by ADDADAY, then YANG shall pay such sum to ARTIST. Attached as **Exhibit "5"** is a true and correct copy of the Guarantee by YANG.

17.     Since ADDADAY ceased making further payments, YANG was supposed to continue making payments to ARTIST for ARTIST's debt because YANG personally guarantees ADDADAY's obligations. However, YANG did not make a single payment.

18.     To date, ADDADAY and YANG have not paid any of the outstanding amounts set forth herein, and is still owing ARTIST $1,117,059.70 for the ARTIST's Debt.

## Unpaid Purchase Orders

19.     The course of dealing between ARTIST and ADDADAY is that whenever ADDADAY needed to order products from ARTIST, ADDADAY will send the description of products needed to ARTIST, and ARTIST will then prepare and send a proforma invoice ("POs") based on the description to ADDADAY. ADDADAY would then sign and return the executed proforma invoice back to ARTIST. After receipt of ADDADAY's executed proforma invoice, ARTIST will

5

then procure the products and ship the products to ADDADAY after ADDADAY paid the respective proforma invoices.

20. Between July 2020 to April 2021, ADDADAY signed and returned to ARTIST several POs to ARTIST, confirming ADDADAY's purchase of products. However, ADDADAY has not paid in full for seven of the POs. The POs at issue are:

**20ADD#C15:**

Invoice amount $371,497.50; ADDADAY paid $69,331.90; outstanding balance $302,165.60; in order to facilitate payment, I sent an email to YANG on May 25, 2021, telling YANG that ARTIST provided a discount of the unit price (from $62.20 to $49.35), and the outstanding balance after discount is $225,755.80; Attached as **Exhibit "6"** is a true and correct copy of the signed PO 20ADD#C15; Attached as **Exhibit "7"** is a true and correct copy of the email reflecting the discount of unit price for PO 20ADD#C15;

**20ADD#C20:**

Invoice amount $36,548.40; ADDADAY paid $20,197.80; outstanding balance $16,350.60; in order to facilitate payment, I sent an email to YANG on May 25, 2021, telling YANG that ARTIST provided a discount of the unit price (from $48.09 to $38.18), and the outstanding balance after discount is $12,981.20; off the balance, ADDADAY paid $4,905.18; remaining balance $8,076.02; Attached as **Exhibit "8"** is a true and correct copy of the signed PO 20ADD#C20; Attached as **Exhibit "9"** is a true and correct copy of the email reflecting the discount of unit price for PO 20ADD#C20;

**20ADD#C23:**

Invoice amount $53,090.00; ADDADAY did not pay, and in order to facilitate payment, I sent an email to YANG on May 25, 2021, telling YANG that ARTIST provided a discount of the unit price (from $53.09 to $42.82), and the new balance is $42,820.00; off the balance, ADDADAY paid

6

$15,987.00; remaining balance $26,833.00; Attached as **Exhibit "10"** is a true and correct copy of the signed PO 20ADD#C23; Attached as **Exhibit "11"** is a true and correct copy of the email reflecting the discount of unit price for PO 20ADD#C23;

**20ADD#C25:**

Invoice amount $1,135.50; ADDADAY paid $853.50; outstanding balance $282.00; Attached as **Exhibit "12"** is a true and correct copy of the signed PO 20ADD#C25;

**20ADD#C26:**

Invoice amount $310,100.00; ADDADAY paid $205,552.00; outstanding balance $$104,548.00; in order to facilitate payment, I sent an email to YANG on May 25, 2021, telling YANG that ARTIST provided a discount of the unit price (from $44.30 to $42.00), and the outstanding balance after discount is $99,120.00; off the balance, ADDADAY paid $14,000.00; remaining balance $85,120.00; Attached as **Exhibit "13"** is a true and correct copy of the signed PO 20ADD#C26; Attached as **Exhibit "14"** is a true and correct copy of the email reflecting the discount of unit price for PO 20ADD#C26;

**20ADD#C29:**

Invoice amount $309.60; outstanding balance $309.60; Attached as **Exhibit "15"** is a true and correct copy of the signed PO 20ADD#C29; and

**21ADD#C2:**

Invoice amount $96,106.60; ADDADAY paid $36,975.00; outstanding balance $59,131.60; Attached as **Exhibit "16"** is a true and correct copy of the signed PO 21ADD#C2.

21.     The total outstanding balance, after discount to some of those orders, is $477,375.20, and ADDADAY has paid only $93,652.56.  Accordingly, ADDADAY still owes ARTIST $383,722.64 under those POs. Since ADDADAY

7

1   has signed the proforma invoices, ARTIST procured the products at its own costs.

2   However, since ADDADAY failed to pay the balances on these POs, ARTIST has

3   not delivered any new products.

4       **22.**    To date, ADDADAY have not paid any of the outstanding amounts set

5   forth herein, and is still owing ARTIST $383,722.64 under these POs.

6       **23.**    ADDADAY and YANG's debt is not secured by an interest in real

7   estate.

8       I declare under penalty of perjury under the laws of the state of California

9   and the United States that the foregoing is true and correct.

10      Executed this 25th day of March, 2022 in the city of Suzhou, China.

13      By: _____

14            Lin Chen

8

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  1

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT

## PURCHASE AGREEMENT AND MUTUAL RELEASE

This Purchase Agreement and Mutual Release (this "**Agreement**") is made and entered into as of September 2, 2020 (the "**Effective Date**"), by and among the Eras Sporting Co., Ltd. ("**Seller**"), Victor Yang ("**Buyer**"), and Addaday, Inc., a Delaware corporation (the "**Company**"). Seller, the Company, and Buyer are collectively referred to herein as the "**Parties**" and individually referred to herein as a "**Party**."

## RECITALS

A.      Seller owns 300,000 shares of common stock of the Company (the "**Eras Common Shares**") of the Company.

B.      Seller, the Company, and Buyer have made arrangement to have Buyer purchase all of the Eras Common Shares for Seller, on the terms and conditions as set forth herein.

NOW, THEREFORE, in consideration of the foregoing recitals which are incorporated herein by this reference, the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.      <u>Common Stock Purchase</u>.  Buyer hereby purchases all of the Eras Common Shares as set forth in this Section:

1.1      <u>Purchase</u>.  Buyer shall purchase all of the Eras Common Shares from Seller (the "**Purchased Shares**") for a total consideration of Five Hundred Thousand Dollars ($500,000.00) (the "**Purchase Price**").

1.2      <u>Payment of Purchase Price</u>.

(a)      The Purchase Price shall be paid as follows:  Buyer shall issue a Promissory Note in favor of Seller in the amount of $500,000 in the form attached hereto as **Exhibit A** (the "**Promissory Note**").

2.      <u>Representations and Warranties of Seller</u>.  Seller hereby represents and warrants to Buyer and the Company that as of the Closing (as defined in <u>Section 4</u>):

2.1      <u>Authority; Binding Obligation</u>.   Seller has full power, authority, and capacity to enter into this Agreement and to perform all of Seller's obligations hereunder.  This Agreement constitutes the valid and legally binding obligation of Seller, enforceable against him in accordance with its terms, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, moratorium, and other principles relating to or limiting the rights of contracting parties generally.

       2.2     <u>Good Title</u>.  Seller is the sole owner of all right, title and interest in and to the Purchased Shares, which shares are fully vested, and has the sole and absolute right to transfer the Purchased Shares to Buyer.

       2.3     <u>No Liens</u>.   The Purchased Shares are free and clear of all liens, encumbrances, claims, and charges of any type whatsoever, and at the Closing,  Seller shall deliver to Buyer good title to the Purchased Shares, free and clear of all liens, encumbrances, claims, and charges of any type whatsoever, other than as created by applicable federal and state securities laws and the Stockholder Agreement, dated as of October 1, 2019, as amended (the "**Stockholder Agreement**").

       2.4     <u>No Assignment</u>.   Seller has not assigned, endorsed, transferred, hypothecated, or in any way disposed of the Purchased Shares or any interest therein.  Seller has no knowledge of any third party that has made a claim in the Purchased Shares.

       2.5     <u>No Litigation</u>.  Seller has not filed or commenced any litigation, arbitration, regulatory, administration or legal proceeding of any nature against the Company, or any shareholder, officer, or director, of the Company, including Buyer.

       2.6     <u>No Conflict or Violation</u>.  To the best of Seller's knowledge, the execution and delivery of this Agreement and the performance of the obligations of Seller pursuant to this Agreement will not: (a) breach any law or order to which Seller is subject, (b) breach any contract, order, or permit to which Seller is a party or by which Seller is bound, or (c) breach any other material note, instrument, agreement, mortgage, license, franchise, permit or other authorization, rights, restriction or obligation to which Seller is a party or by which Seller is bound.

    3.     <u>Representations and Warranties of Buyer</u>.  Buyer, hereby represents and warrants to Seller and the Company that as of the Closing:

       3.1     <u>Authority; Binding Obligation</u>.   Buyer has full power, authority, and capacity to enter into this Agreement and to perform all of Buyer's obligations hereunder.  This Agreement constitutes the valid and legally binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, moratorium, and other principles relating to or limiting the rights of contracting parties generally.

       3.2     <u>No Conflict or Violation</u>.  The execution and delivery of this Agreement and the performance of the obligations of Buyer pursuant to this Agreement will not: (a) breach any law or order to which Buyer is subject, (b) breach any contract, order, or permit to which Buyer is a party or by which Buyer is bound, or (c) breach any other material note, instrument, agreement, mortgage, license, franchise, permit or other authorization, rights, restriction or obligation to which Buyer is a party or by which Buyer is bound.

       3.3     <u>No Litigation</u>.  Buyer has not filed or commenced any litigation, arbitration, regulatory, administration or legal proceeding of any nature against Seller or the Company.

       3.4     <u>Repayment of Debt</u>.  To facilitate the purchase of the Purchased Shares, Buyer will execute certain notes and personal guarantee with respect to certain debts owed by the

Company to Artist International Co., Ltd ("**Notes for Debt**"), in the form attached hereto as **Exhibit B**, with the amount of $1,491,764.70. Buyer represents and warrants that he will pay Seller in accordance with the Notes for Debt.

4.     Closing.   The closing of the transactions involving the Purchased Shares contemplated in this Agreement shall take place concurrently with the execution and delivery of this Agreement by the Parties and the satisfaction of all Closing deliveries (the "**Closing**").

4.1     Seller's Closing Deliveries.  At the Closing, and subject to completion of the closing conditions described in Sections 4.2 below, Seller shall (a) deliver to the Company and Buyer this Agreement duly executed by Seller, (b) duly execute and deliver to Buyer a Stock Assignment Separate from Certificate in the form attached hereto as **Exhibit C** (the "**Assignment**"), and (c) duly execute and deliver to Buyer and the Company such additional documents or agreements that Buyer or the Company may reasonably request in connection with documenting the transfer of the Purchased Shares pursuant to this Agreement.

4.2     Buyer's Closing Deliveries.  At the Closing, Buyer shall (a) deliver to Seller this Agreement duly executed by Buyer, (b) deliver to Seller the Promissory Note duly executed by Buyer, (c) deliver to Seller the Notes for Debt; and (d) duly execute and deliver to Seller such documents or agreements that Seller may reasonably request in connection with documenting the transfer of the Interests pursuant to this Agreement.

4.3     The Company's Closing Deliveries.  At the Closing, the Company shall (a) deliver to Seller and Buyer this Agreement duly executed by the Company, and (b) duly execute and deliver to Seller and Buyer such documents or agreements that Seller or Buyer may reasonably request in connection with documenting the transfer of the Interests pursuant to this Agreement.

5.     Indemnification.

5.1     Indemnification by Seller.  Seller shall indemnify, save, defend, and hold Buyer and the Company, and their officers, directors, managers, members, shareholders, partners, employees, agents, attorneys, spouses, successors, and assigns harmless from and against any and all liabilities, claims, demands, lawsuits, damages, costs, and expenses, including, without limitation, penalties, interest, court costs, reasonable accountants' fees, and reasonable attorneys' fees, (collectively, "**Damages**") arising out of or in connection with (a) any breach of a representation, warranty or covenant by Seller contained in this Agreement or (b) any claim by a beneficiary, heir, successor, assignee or relative of Seller relating to the sale of the Purchased Shares.

5.2     Indemnification by Buyer.  Buyer shall indemnify, save, defend, and hold Seller and its heirs, successors, and assigns harmless from and against any and all Damages arising out of or in connection with any breach of a representation, warranty or covenant contained in this Agreement by Buyer.

5.3     Notice of Claim.  Promptly after the receipt by an indemnified party (the "**Indemnified Party**") of any notice of a claim or the commencement of any action, suit, or proceeding, the Indemnified Party shall give the indemnifying party from whom indemnification is sought (the "**Indemnifying Party**") written notice of such claim or the commencement of such

action, suit, or proceeding.  The written notice shall include the nature, amount, and cause of any claim for indemnification in reasonable detail.  The failure of the Indemnified Party to give notice of any claim for indemnification promptly shall not adversely affect the Indemnified Party's right to indemnity hereunder except to the extent that such failure adversely affects the rights of the Indemnifying Party to assert any reasonable defense to such claim. Upon receipt of a notice of a claim not involving a third party, the Indemnifying Party shall promptly reimburse the Indemnified Party for the Damages suffered by the Indemnified Party.

   5.4 <u>Defense</u>.  Upon receipt of a written notice of a claim from the Indemnified Party with respect to a claim by a third party, the Indemnifying Party shall reimburse the Indemnified Party for the Damages suffered or incurred by the Indemnified Party (other than for intentional wrongdoing by the Indemnified Party), whether by judgment, order, award, settlement, compromise, or otherwise, including but not limited to all expenses.  The Indemnifying Party shall have the right to assume the defense of the claim and to elect to settle, compromise, or defend by the Indemnifying Party's own counsel any claim, at the Indemnifying Party's expense, <u>provided</u> that the Indemnifying Party may not settle or compromise any claim without the Indemnified Party's prior written consent, which consent may not be unreasonably withheld or delayed; <u>provided</u> <u>further</u> that the Indemnified Party may settle or compromise any claim without the Indemnifying Party's prior written consent if the Indemnifying Party fails or refuses to pay for the defense.  The Indemnified Party may employ separate legal counsel, but such separate legal counsel shall be at the Indemnified Party's sole cost and expense.  The Indemnified Party shall use commercially reasonable efforts to assist the Indemnifying Party in the defense of any claim and shall make available all information and assistance that the Indemnifying Party may reasonably request in connection with such defense.

   6. <u>Seller's Covenants</u>.  Seller hereby covenants and agrees to the following:

   6.1 <u>Termination</u>.  As of the Effective Date, (a) the Stockholder Agreement and all rights and obligations thereunder shall be deemed terminated and of no further force and effect; (b) that certain Common Stock Purchase Agreement dated October 1, 2019, by and between the Company and Seller and all rights and obligations thereunder shall be deemed terminated and of no further force and effect; (c) and Li-Ming Hsu shall automatically be deemed to have resigned from the board of directors of the Company; and (d) all Seller's debt repayment obligations, if any, arising by the Company during the time when Seller is the shareholder, shall terminate.

   6.2 <u>Confidential Information</u>.  Seller acknowledges that during the course of Seller's engagement with the Company and in Seller's capacity as an officer and director of the Company, Seller had access to and possession of certain confidential and proprietary knowledge and information about the Company, the finances of the Company, the operations of the Company, and the Company's agreements with third parties, that the Company deems confidential and proprietary (the "**Trade Secret Information**").  Seller shall (a) keep the Trade Secret Information confidential and shall not use or disclose it, directly or indirectly, to any person or entity, except as may be required by law, without the Company's prior written consent, and (b) keep the terms of this Agreement confidential, and shall not disclose the terms of this Agreement to any third party other than to Seller's professional advisors, who need to know such information and agree to keep such information confidential, and to regulators at the written request of the Company in connection with updating the ownership records of the Company.  Trade Secret Information shall

not include information that: (a)  was generally known to the public at the time of disclosure or becomes generally known through no wrongful act on the part of Seller; (b) was already in Seller's possession at the time of its disclosure to Seller; (c)  becomes known to Seller through disclosure by sources other than the Company or its representatives; or (d) was independently developed by Seller outside of his capacity as an officer or director of the Company without use of the Trade Secret Information; provided that with respect to clauses (c) and (d) of this sentence, the source of such information was not bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to the Company or any other party with respect to such information.

      6.3    Remedies.  Seller expressly acknowledges and agrees that the provisions contained in this Section 6 are necessary for the protection of the Company and Buyer, that the Company and Buyer will not have an adequate remedy at law and will be irreparably harmed in the event that any of the provisions of this Section 6 are not performed in accordance with their specific terms or are otherwise breached, and in the event of such breach, money damages would not sufficiently compensate the Company and Buyer for their injury.  In addition to all other remedies available at law or in equity, the Company and Buyer shall be entitled to injunctive or other equitable relief as a remedy for any breach of this Section 6 by Seller, and Seller waives any requirement for the receiving or posting of any bond by any such parties in connection with any such remedy.

      7.    Buyer's Covenants.  Buyer hereby covenants and agrees to the following:

      7.1    Confidential Information.  Buyer shall keep the terms of this Agreement confidential, and shall not disclose the terms of this Agreement to any third party other than to the Company's or Buyer's professional advisors, officers, managers, members, partners, investors, and to any potential owners of the Company or Buyer, who need to know such information and agree to keep such information confidential.  Notwithstanding the terms of this Section 7.1, Buyer shall be permitted to disclose the terms of this Agreement to regulators in connection with updating the ownership records of the Company.

      7.2    Payment.  Buyer agrees to make timely payments of the Purchase Price pursuant to the Promissory Note.

      7.3    Remedies.  Buyer expressly acknowledges and agrees that the provisions contained in Section 7.1 and Section 7.2 are necessary for the protection of Seller and Seller will not have an adequate remedy at law and will be irreparably harmed in the event that any of the provisions of Section 7.1 or Section 7.2 are not performed in accordance with their specific terms or are otherwise breached, and in the event of such breach, money damages would not sufficiently compensate Seller for his injury.  In addition to all other remedies available at law or in equity, Seller shall be entitled to injunctive or other equitable relief as a remedy for any breach of Section 7.1 or Section 7.2 by Buyer, and Buyer waives any requirement for the receiving or posting of any bond by any such parties in connection with any such remedy.

      8.    Company Covenants. The Company hereby covenants and agrees to the following:

8.1     <u>Confidential Information</u>.  The Company shall keep the terms of this Agreement confidential, and shall not disclose the terms of this Agreement to any third party other than to the Company's or Buyer's professional advisors, officers, managers, members, partners, investors, and to any potential owners of the Company or Buyer, who need to know such information and agree to keep such information confidential.  Notwithstanding the terms of this <u>Section 8.1</u>, the Company shall be permitted to disclose the terms of this Agreement to regulators in connection with updating the ownership records of the Company.

8.2     <u>Remedies</u>.  The Company expressly acknowledges and agrees that the provisions contained in <u>Section 8.1</u> are necessary for the protection of Seller and Buyer and Seller and Buyer will not have an adequate remedy at law and will be irreparably harmed in the event that any of the provisions of <u>Section 8.1</u> are not performed in accordance with their specific terms or are otherwise breached, and in the event of such breach, money damages would not sufficiently compensate Seller and/or Buyer for his injury.  In addition to all other remedies available at law or in equity, Seller and Buyer shall be entitled to injunctive or other equitable relief as a remedy for any breach of <u>Section 8.1</u> by the Company, and the Company waives any requirement for the receiving or posting of any bond by any such parties in connection with any such remedy.

9.     <u>General Release by Seller</u>.

9.1     <u>General Release</u>.  To the broadest extent permissible under applicable law, effective as of the Closing, Seller, and on behalf of the his agents, attorneys, employees, successors, and assigns (collectively, the "**Seller Releasors**") hereby forever release, relieve, and discharge the Company, Buyer, and their respective officers, stockholders, partners, investors, members, managers, directors, employees, agents, attorneys, spouses, successors, and assigns (collectively, the "**Buyer Releasees**") of and from any and all claims, demands, actions, causes of action, suits, debts, sums of money, controversies, damages, obligations, and liabilities of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, that Seller Releasors can, shall, or may have against any of Buyer Releasees by reason of, arising out of, or which may hereafter be claimed to arise out of all or any matter, cause, or thing whatsoever from the beginning of time to the Closing of this Agreement (collectively, the "**Seller Claims**").

9.2     <u>Exceptions</u>.  Seller Claims released pursuant to <u>Section 9.1</u> shall not include (a) any claims relating to Buyer's obligations pursuant to this Agreement, the Promissory Note, and the Notes for Debt, or (b) any claims by Seller for indemnification pursuant to this Agreement.

9.3     <u>Waiver</u>.  Seller acknowledges and agrees that the facts in respect to which this release in favor of Buyer Releasees is given may turn out to be other than or different than expected, and expressly waive any and all benefits and rights granted to them pursuant to Section 1542 of the California Civil Code, with which section Seller is familiar and which section reads as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

      9.4    <u>Unknown Claims</u>.  Seller understands and realizes that there  may exist at this time claims herein released in favor of Seller Releasors, the nature of which have not yet been discovered.  It is expressly understood and agreed that the possibility that such claims exist has been explicitly taken into account in determining the consideration to be given for this release and that a portion of that consideration, having been bargained for in full knowledge of the possibility of such unknown claims, was given in exchange for this release.  Seller acknowledges that he has not relied on any representations, warranties or promises not expressly made in this Agreement.

      9.5    <u>No Assignment</u>.  Seller represents and warrants that he has not assigned or otherwise transferred any interest in any Seller Claim.

   10.    <u>General Provisions.</u>

      10.1    <u>Amendment</u>.  All amendments or modifications of this Agreement shall be in writing and shall be signed by each of the Parties hereto.

      10.2    <u>Waiver</u>.  Any waiver of any right, power, or privilege hereunder must be in writing and signed by the Party being charged with the waiver.  No delay on the part of any Party hereto in exercising any right, power, or privilege hereunder shall operate as a waiver of any other right, power, or privilege hereunder, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.

      10.3    <u>Notices</u>.  All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally or sent by overnight courier, by facsimile with confirmation by first class mail, or by certified mail, return receipt requested.  Notices delivered personally or sent by overnight courier or by facsimile with confirmation by first class mail shall be effective on the date first received, while notices sent by certified mail, return receipt requested, shall be deemed to have been received and to be effective three (3) business days after deposit into the mail.  Notices shall be given to each Party at the following respective address, or at such other address as a Party shall designate in writing:

If to Seller:               Eras Sporting Co., Ltd

If to the Company:       Addaday, Inc.
                                Attn: Victor Yang

If to Buyer:               Victor Yang

7

10.4   <u>Successors and Assigns</u>.  This Agreement and each of its provisions shall be binding upon and shall inure to the benefit of the Parties hereto and their respective administrators, successors, and assigns. Seller may not assign any of its rights and obligations under this Agreement.

10.5   <u>Representation by Counsel</u>.  The Parties acknowledge that they have been represented by their own legal counsel in connection with the negotiation and drafting of this Agreement and that they have each entered into this Agreement after consulting with such legal counsel.

10.6   <u>Law Governing</u>.  This Agreement has been negotiated, executed, and delivered and shall be performed in the State of California and shall be governed by and construed and enforced in accordance with the laws of the State of California, without regard for its conflict of laws rules.  The parties hereby irrevocably submit to the exclusive jurisdiction of the courts of the State of California and any United States District Court situated in the State of California for the purposes of construing and enforcing this Agreement.

10.7   <u>Attorneys' Fees</u>.  Should a lawsuit or arbitration be commenced to interpret or enforce the terms of this Agreement, the prevailing party shall be entitled to recover reasonable costs, attorneys' fees, and expenses in addition to any other recovery to which such party may be entitled.

10.8   <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, including by facsimile transmission or email of a scanned pdf signature page, all of which together shall constitute a single instrument.

10.9   <u>Severability of Provisions</u>.  In the event any one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.  To the extent permissible such invalid provision shall be modified or interpreted to preserve the meaning and intent of the Parties hereto prior to being severed.

10.10   <u>Integration</u>.  This Agreement, including the Exhibits and Schedules hereto, constitutes the entire understanding and agreement between the Parties with respect to the transactions contemplated herein and supersedes and terminates all previous communications, representations, agreements, and understandings, either oral or written, among the Parties relating to the subject matter hereof.

10.11   <u>Expenses</u>.  Each Party shall bear all of such Party's own expenses incurred in negotiating and performing this Agreement.

10.12   <u>Disclaimer of Third Party Beneficiary Contract</u>.  The Parties specifically disavow any desire or intention to create a third party beneficiary contract, except in connection with the releases set forth in this Agreement, and specifically declare that no person or entity other than the Parties, the other parties released hereunder, and their respective heirs, successors, and assigns shall have any rights hereunder or any right of enforcement hereof.  Notwithstanding

8

anything to the contrary in this Section, the Parties agree that the Company is an intended third party beneficiary of this Agreement.

10.13 <u>Survival of Representations, Warranties and Covenants</u>.   Except as otherwise specifically provided in this Agreement, the representations, warranties and covenants set forth in this Agreement shall be effective upon the mutual execution by the Parties of this Agreement and shall survive the Closing and delivery of any instruments of transfer pursuant hereto for the maximum period permitted pursuant to applicable law.

10.14 <u>Construction</u>.   The headings in the sections of this Agreement are for convenience only and shall not constitute a part hereof.   Whenever the context so requires, the masculine shall include the feminine and the neuter, the singular shall include the plural, and conversely.   All references to numbered sections contained herein refer to the sections of this Agreement unless otherwise expressly stated.   The terms and all parts of this Agreement shall in all cases be interpreted simply and according to their plain meaning and neither for nor against any Party hereto.

[*Signatures appear on next page.*]

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of the Effective Date first set forth above.

**SELLER:**

**Eras Sporting Co., Ltd.**

_____
Name: 許立位
Title:

**BUYER:**

By: _____
Name:      Victor Yang

S-1

IN WITNESS WHEREOF, the Company expressly agrees to the terms set forth in <u>Section 4</u>, <u>Section 5</u>, <u>Section 6.1</u>, <u>Section 8</u>, <u>Section 9</u>, and <u>Section 10.</u> of this Agreement only as of the Effective Date.

**THE COMPANY:**

Addaday, Inc.,
a Delaware corporation

By: _____
Name:  Victor Yang
Title:  CEO

## LIST OF EXHIBITS AND SCHEDULES

Exhibit A          Promissory Note

Exhibit B          Notes for Debt (Personal Guarantee, and Promissory Note for $1,491,764.70)

Exhibit C          Stock Assignment Separate from Certificate

# EXHIBIT A

## Promissory Note

[Attached to this page.]

4135-4910-8506.6

# EXHIBIT B

**Promissory Note for the Debt and Personal Guarantee for the Debt**

[Attached to this page.]

## EXHIBIT C

## ADDADAY, INC.

## FORM OF STOCK ASSIGNMENT SEPARATE FROM CERTIFICATE

FOR VALUE RECEIVED, Eras Sporting Co., Ltd. hereby sells, assigns and transfers unto Victor Yang, 300,000 shares (the "**Shares**") of Common Stock of Addaday, Inc., a Delaware corporation ("**Addaday**"), which Shares are currently represented by Certificate No. 2, and does hereby irrevocably constitute and appoint any officer of Addaday to transfer the Shares on the books of Addaday with full power of substitution in the premises.

Dated: _____

<div style="margin-left:40%;">

Eras Sporting Co., Ltd.

_____
Name:
Title:

</div>

4135-4910-8506.6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  2

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

# PROMISSORY NOTE

$500,000.00 USD

Santa Monica, California
Date: September 2, 2020

**1.     Promise to Pay.**  FOR VALUE RECEIVED, the Victor Yang, an individual with
California Driver's license number _____A9993930_____ ("**Debtor**") promises to pay to the
order of  Eras Sporting Co., Ltd, an  active corporation, with mailing address at
__6F-4, No.210, Nong-An Street__. ("**Creditor**"), or at such other place as may be
designated in writing by Creditor, the principal sum of Five Hundred Thousand US Dollars
($500,000.00 USD), in one lump sum payment, with no interest, on or before the Maturity Date
(as define below).  All sums owing hereunder are payable in lawful money of the United States
of America, in immediately available funds.

*Taipei Taiwan ROC*

**2.     Interest.**  Both Debtor and Creditor agree that there will be no interest on this Promissory
Note ("**Note**").

**3.     Maturity Date.**  The outstanding principal balance of this Note shall be due and payable
in full on February 1, 2021 (the "**Maturity Date**").

**4.     No Prepayment Penalty.**  Creditor agrees that there is no prepayment penalty associated
with this Note.  Debtor may prepay this Note to Creditor at anytime prior to the Maturity Date,
without incurring any prepayment penalty against Debtor.

**5.     Modifications; Loss of Note.**  No amendment or modification of any of the terms of this
Note shall be valid or binding on Creditor unless such amendment or modification is in writing
and signed by Creditor.  If this Note is lost, stolen, or destroyed, or if this Note is mutilated, upon
Creditor's surrender of the mutilated Note to Debtor, Debtor shall execute and deliver to Creditor
a new promissory note which is identical in form and content to this Note to replace the lost, stolen,
destroyed or mutilated Note.

**6.     Severability.**  If any term of this Note, or the application thereof to any person or
circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Note, or the
application of such term to persons or circumstances other than those as to which it is invalid or
unenforceable, shall not be affected thereby, and each term of this Note shall be valid and
enforceable to the fullest extent permitted by law.

**7.     Time of the Essence.**  Time is of the essence with respect to every provision hereof.

**8.     Governing Law.**  This Note shall be construed and enforced in accordance with the laws
of the State of California, without regard to conflict of law principles. All persons and entities in
any manner obligated under this Note consent to the exclusive jurisdiction of the federal or state
courts in Orange County, State of California. Should a lawsuit be commenced to interpret or
enforce the terms of this Note, the prevailing party shall be entitled to recover reasonable costs,
attorneys' fees, and expenses in addition to any other recovery to which such party may be
entitled.

**9.**   **Notices.**   All notices, demands, or other communications under this Note shall be in writing and shall be delivered to the appropriate party at the address set forth below (subject to change as set forth below). Except when otherwise required by law, any notice which a party is required or may desire to give the other shall be in writing and may be sent by personal delivery or by mail (either [i] by United States registered or certified mail, return receipt requested, postage prepaid, or [ii] by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), or by facsimile transmittal (in which case, such notice if immediately followed by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery shall be deemed given upon receipt of a transmittal confirmation statement). Any notice so given by mail shall be deemed to have been given as of the date of delivery established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be. Any such notice not so given shall be deemed given upon receipt of the same by the party to whom the same is to be given; provided, however, that non-receipt of any communication as the result of any change of address of which the sending party was not notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication. Any party shall have the right to change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days written notice to the other parties in the manner set forth above.

Addresses for Notices:

If to Creditor:        Eras Sporting Co., Ltd.

If to Debtor:          Victor Yang

**10.**   **Assignment**.  This Note may not be assigned by Debtor or Creditor, in whole or in part, to any person or entity without the consent of the other party, which consent may be withheld at such party's sole discretion.

### (SIGNATURE PAGE TO IMMEDIATELY FOLLOW)

IN WITNESS WHEREOF, the Debtor have executed this Note as of the date set forth above.

**"DEBTOR"**

Victor Yang

_____
Victor Yang

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT

# AGREEMENT ON DEBT GUARANTEE AND SALE OF EQUITY OF ADDADAY, INC.

This AGREEMENT (the "**Agreement**") memorializes the terms and conditions of a negotiation with the effective date of September 2, 2020 (the "**Effective Date**"), and is binding by and among, Addaday, Inc., a Delaware corporation ("**Addaday**"), Victor Yang, an individual ("**Guarantor**"), Artist International Co., Ltd. ("**Supplier**"), and Eras Sporting Co., Ltd. ("**Eras**"), regarding the outstanding balance (the "**Debt**") owed by Addaday to Supplier and a sale of all outstanding shares of common stock owned in Addaday by Eras to a third party.

**RECITALS:**

1.  From March 6, 2019 to July 22, 2019, the Debt was incurred by Addaday due to Supplier's supply of goods to Addaday.

2.  Both Addaday and Guarantor agree and acknowledge that, as of the Effective Date, the amount of the Debt is $1,491,764.70 USD.

3.  Guarantor agrees to personally guarantee the Debt of Addaday and Eras agrees to sell all of its shares of common stock owned in Addaday to Guarantor.

4.  The confirmation and guarantee of the Debt is approved and consented by all stockholders and the board of directors of Addaday;

5.  All parties agree that in no event Eras shall be responsible for the Debt as the shareholder of Addaday.

In consideration of the promises and the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

**ARTICLE I:   The Debt**

1. The Debt shall be evidenced with a promissory note executed by Addaday and personally guaranteed by Guarantor (the "**Promissory Note**"), with a total principal balance of $1,491,764.70.  The Promissory Note is attached to this Agreement as <u>Exhibit A</u>, executed by Addaday payable to Supplier, in equal monthly installments of $93,235.00 beginning on October 1, 2020, for 16 months, with the last payment of $93,239.70 ("**Monthly Installments**") and personally guaranteed by Guarantor pursuant to the Continuing Guaranty attached to this Agreement as <u>Exhibit B</u>.

2. In addition to the guarantee of the Debt, Addaday shall make available to Guarantor any and all materials and documents held by the Addaday necessary to evidence the Debt as of the Effective Date of this Agreement.

3.  The parties to this Agreement shall promptly execute and deliver any and all additional documents, instruments, notices, and other assurances, and shall do any and all other acts and things, reasonably necessary in connection with the performance of their respective obligations under this Agreement and to carry out the intent of the parties.

4.  The parties agree that in no event shall Eras be responsible for any or all portion of the Debts as the shareholder of Addaday.

## ARTICLE II. Guarantee of Debt

Guarantor hereby agrees to personally guarantee the payment obligations represented by the Promissory Note, and agrees to be bound by all of the conditions and covenants contained in the Promissory Note.

## ARTICLE III. Other Obligations

As the consideration of the Debt guarantee, Eras agrees to sell all of its 300,000 shares of Common Stock in Addaday (the "**Addaday Shares**") for $500,000 USD (the "**Purchase Price**") to Guarantor as of the Effective Date pursuant to a Common Stock Purchase Agreement attached hereto as Exhibit C.  The Purchase Price shall be paid pursuant to a separate Promissory Note issued by Guarantor to Eras in the amount of the Purchase Price with a maturity date of February 1, 2021, pursuant to the Guarantor Promissory Note attached hereto as Exhibit D.

## ARTICLE IV. Representations, Covenants and Warranties of Addaday as of the Effective Date:

1. Addaday is a corporation, legally established and validly existing under the Delaware law.

2. Addaday had all rights, powers and authorities to enter into and perform all duties and responsibilities under this Agreement.

3. Addaday legally and actually owes the Debt personally guaranteed under this Agreement, and has secured all necessary approvals therefore, provided, however, Eras shall be in no event responsible for the Debts as the shareholder of Addaday.

4. Execution or performance of this Agreement by Addaday does not breach any applicable laws, the certificate of incorporation, bylaws, stockholder agreement, contracts, agreements or any other legal documents which Addaday is subject to.

## ARTICLE V. Representations, Covenants and Warranties of Guarantor as of the Effective Date

1. Guarantor has full rights to conduct the matters in respect of this Agreement, and has secured all approvals and/or authorizations in respect of execution and performance of this Agreement.

Debt Guarantee Agreement and Sale of Equity                                                    2

2. Execution or performance of this Agreement by Guarantor will not breach any applicable laws, the Addaday's certificate of incorporation, bylaws, stockholders agreement, contracts, or other legal documents which Guarantor is subject to.

**ARTICLE VI. Representations, Covenants and Warranties of Supplier as of the Effective Date**

1. Supplier had all rights, powers and authorities to enter into and perform all duties and responsibilities under this Agreement Supplier, including releasing Addaday as provided under this Agreement, and has secured all approvals and/or authorizations in respect of execution and performance of this Agreement.

2. Execution or performance of this Agreement by Supplier will not breach any applicable laws, the Supplier's charter, contracts, or other legal documents which Supplier is subject to.

3. Supplier represents and warrants that (i) the Debt amount of $[1,491,764.70] is true and accurate (ii) Addaday has no other obligations to Supplier as of the Effective Date; and (iii) that Supplier has complied with all applicable laws and regulation in providing the supply of goods to Addaday and such supply of goods is free from any defects.

**ARTICLE VII. Representations, Covenants and Warranties of Eras as of the Effective Date**

1. Eras had all rights, powers and authorities to enter into and perform all duties and responsibilities under this Agreement Supplier, including releasing Addaday as provided under this Agreement, and has secured all approvals and/or authorizations in respect of execution and performance of this Agreement.

2. Execution or performance of this Agreement by Eras will not breach any applicable laws, its charter, contracts, or other legal documents which Eras is subject to.

3. Eras represents and warrants that (i) it owns good and valid record and beneficial title to the Addaday Shares, free and clear of any liens and encumbrances other than those imposed by the Stockholder Agreement dated October 1, 2019 (the "**Stockholder Agreement**") and federal and state securities laws, with no defects of title whatsoever; and (ii) upon the sale of the Addaday Shares to a third party pursuant to this Agreement, the purchaser shall have obtained good and valid title to the Addaday Shares, free and clear of any liens and encumbrances other than those imposed by the Stockholder Agreement and federal and state securities laws, with no defects of title whatsoever.

4. Upon consummation of the sale of the Addaday Shares and receipt of the Guarantor Promissory Note, (a) the Stockholder Agreement and all rights and obligations thereunder shall be deemed terminated and of no further force and effect; (b) that certain Common Stock Purchase Agreement dated October 1, 2019, by and between Addaday and Eras and all rights and obligations thereunder shall be deemed terminated and of no further force and effect; (c)

and Li-Ming Hsu shall automatically be deemed to have resigned from the board of directors of Addaday; and (d) Eras shall not be responsible for the debts in any event.

## ARTICLE VIII. Fees and Expenses

1. The parties hereto agree that they have consulted their respective attorneys or the opportunities to consult their attorneys and waive their rights to attorneys, and to bear their respective fees incurred for engagement of lawyers, accountants, appraisers, financial advisors and other professionals.

2. Any taxable liability incurred under the Debt guarantee shall be borne by Addaday and Guarantor respectively according to the applicable laws.

3. Any other expenses occurred in connection with the Debt guarantee (including without limitation the expenses relating to change registration at Secretary of State) shall be borne by the party incurring such expenses.

## ARTICLE IX. Other Matters relating to this Agreement

1. Any amendment to this Agreement shall be in writing and signed by all parties. Any amendment or addition shall constitute an integral part of this Agreement.

2. Eras shall not be held responsible for any debt, liabilities and responsibilities of any kind incurred in any transactions, or activities of Addaday after the Effective Date.

3. Within ten (10) days after a default by Addaday in making the Monthly Installments, Supplier shall serve a written notice of default on Addaday and Guarantor and may, unless the default is cured within ten (10) days after giving the notice, declare the entire balance due on the Debt immediately due and payable by Guarantor.

## ARTICLE X. Applicable Laws

This Agreement shall be interpreted and construed in accordance with the laws of the State of California, without regard to principles of conflicts of laws. All persons and entities in any manner obligated under this Note consent to the exclusive jurisdiction of the federal or state courts in Los Angeles County, State of California.  Should a lawsuit be commenced to interpret or enforce the terms of this Note, the prevailing party shall be entitled to recover reasonable costs, attorneys' fees, and expenses in addition to any other recovery to which such party may be entitled.

## ARTICLE XI. Severability

If any provision of this Agreement is determined by any court of competent jurisdiction or arbitrator to be invalid, illegal, or unenforceable to any extent, that provision shall, if possible, be construed as though more narrowly drawn, if a narrower construction would avoid such invalidity, illegality, or unenforceability or, if that is not possible, such provision shall,

to the extent of such invalidity, illegality, or unenforceability, be severed, and the remaining provisions of this Agreement shall remain in effect.

## ARTICLE XII. Counterparts

This Agreement may be executed in two or more counterparts, and each set of duly delivered identical counterparts which includes all signatories shall be deemed to be one original document. Electronic delivery of an executed counterpart shall constitute delivery of an original.

*[signature page follows]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the date first written above.

**Addaday:**
Addaday, Inc., a Delaware corporation

By: _____
    Victor Yang, President


**Guarantor:**

_____
Victor Yang


**Supplier:**
Artist International Co., Ltd.

ARTIST INT'L CO., LTD.

By: _____


**Eras:**
Eras Sporting Co., Ltd.

By: _____

**Exhibit A**
**ADDADAY PROMISSORY NOTE**

**Exhibit B**
**CONTINUING GUARANTY**

**Exhibit C**
**COMMON STOCK PURCHASE AGREEMENT**

**Exhibit D**
**GUARANTOR PROMISSORY NOTE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  4

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT

# PROMISSORY NOTE

$ 1,491,764.70 USD

Santa Monica, California
Date: September 2, 2020

**1.      Promise to Pay.**  FOR VALUE RECEIVED, the Addaday, Inc., a Delaware corporation ("**Debtor**") promises to pay to the order of  Artist International Co., Ltd., an  active corporation, with mailing address at 6F-4, No. 210, Nong-An Street, Taipei, Taiwan ROC ("**Creditor**"), or at such other place as may be designated in writing by Creditor, the principal sum of  One Million Four Hundred Ninety One Thousand  Seven Hundred And Sixty Four Us Dollars And Seventy Cents ($1,491,764.70 USD), in sixteen (16) equal monthly installments of $93,235, beginning on October 1, 2020, and the last payment of $93,239.70, with no interest.  All sums owing hereunder are payable in lawful money of the United States of America, in immediately available funds.

**2.      Interest.**  Both Debtor and Creditor agree that there will be no interest on this Promissory Note ("**Note**").

**3.      Maturity Date.**  The outstanding principal balance of this Note shall be due and payable in full on February 28, 2022 (the "**Maturity Date**").

**4.      No Prepayment Penalty.**  Creditor agrees that there is no prepayment penalty associated with this Note.  Debtor may prepay this Note to Creditor at anytime prior to the Maturity Date, without incurring any prepayment penalty against Debtor.

**5.      Modifications; Loss of Note.**  No amendment or modification of any of the terms of this Note shall be valid or binding on Creditor unless such amendment or modification is in writing and signed by Creditor.  If this Note is lost, stolen, or destroyed, or if this Note is mutilated, upon Creditor's surrender of the mutilated Note to Debtor, Debtor shall execute and deliver to Creditor a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

**6.      Severability.**  If any term of this Note, or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Note, or the application of such term to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Note shall be valid and enforceable to the fullest extent permitted by law.

**7.      Time of the Essence.**  Time is of the essence with respect to every provision hereof.

**8.      Governing Law.**  This Note shall be construed and enforced in accordance with the laws of the State of California, without regard to conflict of law principles. All persons and entities in any manner obligated under this Note consent to the exclusive jurisdiction of the federal or state courts in Orange County, State of California. Should a lawsuit be commenced to interpret or enforce the terms of this Note, the prevailing party shall be entitled to recover reasonable costs,

IN WITNESS WHEREOF, the Debtor have executed this Note as of the date set forth above.

**"DEBTOR"**

Addaday, Inc.

_____

Victor Yang, President

PROMISSORY NOTE

attorneys' fees, and expenses in addition to any other recovery to which such party may be entitled.

**9.    Notices.**  All notices, demands, or other communications under this Note shall be in writing and shall be delivered to the appropriate party at the address set forth below (subject to change as set forth below). Except when otherwise required by law, any notice which a party is required or may desire to give the other shall be in writing and may be sent by personal delivery or by mail (either [i] by United States registered or certified mail, return receipt requested, postage prepaid, or [ii] by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), or by facsimile transmittal (in which case, such notice if immediately followed by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery shall be deemed given upon receipt of a transmittal confirmation statement). Any notice so given by mail shall be deemed to have been given as of the date of delivery established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be. Any such notice not so given shall be deemed given upon receipt of the same by the party to whom the same is to be given; provided, however, that non-receipt of any communication as the result of any change of address of which the sending party was not notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication. Any party shall have the right to change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days written notice to the other parties in the manner set forth above.

Addresses for Notices:

If to Creditor:          Artist International Co., Ltd.

If to Debtor:           Addaday, Inc.

**10.    Assignment**.  This Note may not be assigned by Debtor or Creditor, in whole or in part, to any person or entity without the consent of the other party, which consent may be withheld at such party's sole discretion.

**11.    Personal Guarantee**.  This Note and the obligations hereunder shall be personally guaranteed by Victor Yang pursuant to a separate Continuing Guarantee.

**(SIGNATURE PAGE TO IMMEDIATELY FOLLOW)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  5

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT

## PERSONAL GUARANTEE OF PROMISSORY NOTE

THIS PERSONAL GUARANTEE OF PROMISSORY NOTE ("***Guarantee***") is made as of September 2, 2020, by Victor Yang, an individual with California driver's license number _____ ("***Guarantor***"), whose address is set forth below his signature to this Guarantee, in favor of Artist International Co., Ltd. ("***Lender***").

**WHEREAS**, Addaday, Inc., a Delaware corporation ("***Borrower***") who is an affiliate of Guarantor, has become indebted to Lender pursuant to that certain Promissory Note, set forth on Exhibit A, in the principal amount of One Million Four Hundred and Ninety One Thousand Seven Hundred and Sixty Four Dollars and Seventy Cents ($1,491,764.70) (the "***Note***").

**WHEREAS**, Guarantor has a financial interest in Borrower and has received and/or otherwise benefited from the use of the proceeds of the Note.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby absolutely, presently, continually, unconditionally and irrevocably guarantees the prompt payment by Borrower of all interest, principal payments, and all other payments payable by Borrower under the Note (including without limitation fees, expenses, damages and indemnities and legal expenses), and the faithful and prompt performance by Borrower of each and every one of the terms, conditions and covenants of the Note to be kept and performed by Borrower, and further agrees as follows:

1.      It is specifically agreed and understood that the terms, covenants and conditions of the Note may be altered, affected, modified, amended, compromised, released or otherwise changed by agreement between Lender and Borrower, or by course of conduct, and Guarantor does guarantee and promise to perform all of the obligations of Borrower under the Note as so altered, affected, modified, amended, compromised, released or changed; and the Note may be assigned by or with the consent of Lender or any assignee of Lender without consent or notice to Guarantor and that this Guarantee shall thereupon and thereafter guarantee the performance of the Note as so changed, modified, amended, compromised, released, altered or assigned.

2.      This Guarantee shall not be released, modified or affected by failure or delay on the part of Lender to enforce any of the rights or remedies of Lender under the Note, whether pursuant to the terms thereof or at law or in equity, or by any release of any person liable under the terms of the Note or from any liability with respect to Guarantor's obligations hereunder.

3.      Guarantor's liability under this Guarantee shall continue until all obligations of Borrower under the Note have been fully performed and satisfied.

4.      Guarantor warrants and represents to Lender that Guarantor now has and will continue to have full and complete access to any and all information concerning the Note, the value of the assets owned or to be acquired by Borrower, Borrower's financial status and its ability to pay and perform the obligations under the Note.  Guarantor further warrants and represents that Guarantor has reviewed and approved copies of the Note and is fully informed of the remedies Lender may pursue, with or without notice to Borrower, in the event of default under the Note.  So long as any of Guarantor's obligations hereunder remains unsatisfied or owing to Lender, Guarantor shall keep fully informed as to all aspects of Borrower's financial condition and the performance of said obligations.

5.      Guarantor hereby covenants and agrees that if a default shall at any time occur in the payment of any sums due under the Note by Borrower or in the performance of any other obligation of Borrower under the Note, Guarantor shall and promptly upon demand pay such sums, and any arrears thereof, to Lender in legal currency of the United States of America for payment of public and private debts, and take all other actions necessary to cure such default and perform such obligations of Borrower.

6.      The liability of Guarantor under this Guarantee is a guarantee of payment and performance and not of collectability, and is not conditioned or contingent upon the genuineness, validity, regularity or enforceability of the Note or the pursuit by Lender of any remedies which it now has or may hereafter have with respect thereto, at law, in equity or otherwise.

7.      To the extent permitted by law, Guarantor hereby waives and agrees not to assert or take advantage of: (a) All notices to Guarantor, to Borrower, or to any other person, including, but not limited to, notices of the acceptance of this Guarantee or the creation, renewal, extension, assignment, modification or accrual of any of the obligations owed to Lender under the Note and enforcement of any right or remedy with respect thereto, and notice of any other matters relating thereto; (b) notice of acceptance of this Guarantee; (c) demand of payment, presentation and protest; (d) demand for performance, (e) any right to require Lender to apply to any default any security deposit or other security it may hold under the Note; (f) any right or defense that may arise by reason of the incapability, lack or authority, death or disability of Borrower or any other person; (g) any statute of limitations affecting the enforcement of this Guarantee; (h) all principles or provisions of law which conflict with the terms of this Guarantee; (i) any right to require Lender to proceed against Borrower or any other person or pursue any other remedy granted to Lender in any Loan Document; (j) any right or claim of right to cause a marshaling of Borrower's assets or to require Lender to proceed against Guarantor in any particular order; and (k) any right to cure any default on behalf of Borrower.  Moreover, Guarantor agrees that Guarantor's obligations shall not be affected by any circumstances which constitute a legal or equitable discharge of a guarantor or surety.

8.      Guarantor agrees that Lender may enforce this Guarantee without the necessity of proceeding against Borrower or any other Guarantor.  Guarantor hereby waives the right to require Lender to proceed against Borrower, to proceed against any other guarantor, to exercise any right or remedy under the Note or to pursue any other remedy or to enforce any other right.

9.      Guarantor agrees:

        (a)      That nothing contained herein shall prevent Lender from suing on the Note or from exercising any rights available to Lender thereunder and that the exercise of any of the aforesaid rights shall not constitute a legal or equitable discharge of any Guarantor.

        (b)      Guarantor shall have no right of subrogation against Borrower or any right of contribution against any other guarantor unless and until all obligations under the Note have been fully performed and satisfied.  Guarantor further agrees that, to the extent the waiver of Guarantor's rights of subrogation and contribution as set forth herein is found by a court of competent jurisdiction to be void or voidable for any reason, any rights of subrogation Guarantor may have against Borrower shall be junior and subordinate to any rights Lender may have against Borrower.

        (c)      The obligations of Guarantor under this Guarantee shall not be altered, limited or affected by any case, voluntary or involuntary, involving the bankruptcy, insolvency, receivership, reorganization, liquidation or arrangement of Borrower or any defense which

2

Borrower may have by reason of order, decree or decision of any court or administrative body resulting from any such case. Lender shall have the sole right to accept or reject any plan on behalf of Guarantor proposed in such case and to take any other action which Guarantor would be entitled to take, including, without limitation, the decision to file or not file a claim. Guarantor acknowledges and agrees that any payment which accrues with respect to Borrower's obligations under the Note (including, without limitation, the payment of interest and principal) after the commencement of any such proceeding (or, if any such payment ceases to accrue by operation of law by reason of the commencement of such proceeding, such payment as would have accrued if said proceedings had not been commenced) shall be included in Guarantor's obligations hereunder because it is the intention of the parties that said obligations should be determined without regard to any rule or law or order which may relieve Borrower of any of its obligations under the Note. Guarantor hereby permits any trustee in bankruptcy, receiver, debtor-in-possession, assignee for the benefit of creditors or similar person to pay Lender, or allow the claim of Lender in respect of, any such payment accruing after the date on which such proceeding is commenced. Guarantor hereby assigns to Lender Guarantor's right to receive any payments from any trustee in bankruptcy, receiver, debtor-in-possession, assignee for the benefit of creditors or similar person by way of dividend, adequate protection payment or otherwise.

(c)     Any notice, statement, demand, consent, approval or other communication required or permitted to be given, rendered or made by either party to the other, pursuant to this Guarantee or pursuant to any applicable law or requirement of public authority, shall be in writing (whether or not so stated elsewhere in this Guarantee) and shall be deemed to have been properly given, rendered or made only if hand-delivered or sent by first-class mail, postage pre-paid, addressed to the other party at its respective address set forth below, and shall be deemed to have been given, rendered or made on the day it is hand-delivered or two (2) business days after it is mailed. By giving notice as provided above, either party may designate a different address for notices, statements, demands, consents, approvals or other communications intended for it.

> To Guarantor:
> the address below
> guarantor's signature

> To Lender:
> ~~ARTIST INT'L CO., LTD.~~
> Attn: ~~釋立名~~

10.     Guarantor represents and warrants to Lender as follows:

(a)     No consent of any other person, including, without limitation, any creditors of Guarantor, and no license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority is required by Guarantor in connection with this Guarantee or the execution, delivery, performance, validity or enforceability of this Guarantee and all obligations required hereunder. This Guarantee has been duly executed and delivered by Guarantor, and constitutes the legally valid and binding obligation of Guarantor enforceable against Guarantor in accordance with its terms.

(b)     The execution, delivery and performance of this Guarantee will not violate any provision of any existing law or regulation binding on Guarantor, or any order, judgment, award or decree of any court, arbitrator or governmental authority binding on Guarantor, or of any mortgage, indenture, lease, contract or other agreement, instrument or undertaking to which

Guarantor is a party or by which Guarantor or any of Guarantor's assets may be bound, and will not result in, or require, the creation or imposition of any lien on any of Guarantor's property, assets or revenues pursuant to the provisions of any such mortgage, indenture, lease, contract or other agreement, instrument or undertaking.

11.     This Guarantee shall be binding upon Guarantor and his heirs, representatives, administrators, executors, successors and assigns and shall inure to the benefit of and shall be enforceable by Lender, its successors, endorsees and assigns. Any married person executing this Guarantee agrees that recourse may be had against community assets and against his or her separate property for the satisfaction of all obligations herein guaranteed. As used herein, the singular shall include the plural, and the masculine shall include the feminine and neuter and vice versa, if the context so requires.

12.     The term "Lender" whenever used herein refers to and means the Lender specifically named in the Note and also any assignee of the said Lender, whether by outright assignment or by assignment for security, and also any successor to the interest of the said Lender or of any assignee in the Note or any part thereof, whether by assignment or otherwise.

13.     In the event of any dispute or litigation regarding the enforcement or validity of this Guarantee, without limiting any applicable indemnification provisions of the Note, Guarantor shall be obligated to promptly pay all claims, demands, losses, lawsuits, expenses, charges, costs, fees, liabilities and expenses (including, without limitation, reasonable attorneys' fees) ("*Liabilities*") incurred by Lender and its respective successors and assigns (collectively, the "*Indemnified Parties*"), whether or not any action or proceeding is commenced regarding such dispute and whether or not such litigation is prosecuted to judgment. Without limiting any applicable indemnification provisions of the Note, Guarantor hereby agrees to indemnify, defend, and hold harmless the Indemnified Parties, from and against any and all Liabilities incurred by any of the Indemnified Parties or in connection with this Guarantee (including the enforcement of this Guarantee) and the exercise of Lender's rights hereunder.

14.     This Guarantee shall be governed by and construed in accordance with the laws of the State of California without giving effect to its conflict of law provisions. Guarantor, by entering into this Agreement, submits to the jurisdiction in Los Angeles, California for adjudication of any disputes and/or claims between the parties under this Guarantee. Furthermore, Guarantor hereby agrees that the state and federal courts located in Los Angeles, California shall have the exclusive jurisdiction over any disputes between the parties relevant to this Guarantee.

15.     Every provision of this Guarantee is intended to be severable. In the event any term or provision hereof is declared to be illegal or invalid for any reason whatsoever by a court of competent jurisdiction, such illegality or invalidity shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable.

16.     This Guarantee may be executed in any number of counterparts each of which shall be deemed an original and all of which shall constitute one and the same Guarantee with the same effect as if all parties had signed the same signature page. Any signature page of this Guarantee may be detached from any counterpart of this Guarantee and re-attached to any other counterpart of this Guarantee identical in form hereto but having attached to it one or more additional signature pages.

17.     No failure or delay on the part of Lender to exercise any power, right or privilege under this Guarantee shall impair any such power, right or privilege, or be construed to be a

waiver of any default or an acquiescence therein, nor shall any single or partial exercise of such power, right or privilege preclude other or further exercise thereof or of any other right, power or privilege.

18.     This Guarantee shall constitute the entire agreement between Guarantor and the Lender with respect to the subject matter hereof.  No provision of this Guarantee or right of Lender hereunder may be waived nor may any Guarantor be released from any obligation hereunder except by a writing duly executed by Lender.

19.     The liability of Guarantor and all rights, powers and remedies of Lender hereunder and under any other agreement now or at any time hereafter in force between Lender and Guarantor relating to the Note shall be cumulative and not alternative and such rights, powers and remedies shall be in addition to all rights, powers and remedies given to Lender by law.

20.     In the event that this Agreement is executed by more than one party as Guarantor, the liability of such parties is joint and several.  A separate action or actions may be brought and prosecuted against any Guarantor, whether or not action is brought against any other person or whether or not any other person is joined in such action or actions.

[Signature on Next Page]

**IN WITNESS WHEREOF**, Guarantor has executed this Guarantee as of the day and year first above written.

<p style="text-align: center;">**GUARANTOR:**</p>

By: _____

Name: Victor Yang

Address:  2120 Palos Verdes Dr W

              Palos Verdes Estates CA 90274

**Exhibit A**

Promissory Note

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  6

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT

**ARTIST INT'L CO., LTD.**
60 Market Square, P.O. Box 364, Belize City, Belize
Tel: 886-2-2507-7872; Fax: 886-2-2507-702⁹

## Sales Confirmation
**Updated ON 10/23!**

| To: | | Date: | 10/Jul/20 |
|---|---|---|---|
| Addaday Inc. | | PI# | 20ADD#C15 |
| 2500 Broadway F125, Santa Monica, | | Tel: | 310-905-2737 |
| CA90404, USA | | Fax: | |

| SHIPMENT: | See shipping schedule. | |
|---|---|---|
| SHIP FROM: | Ningbo | China |
| TO: | Los Angeles | USA |
| PAYMENT: | T/T 90 DAYS | |

| | Item No. | DESCRIPTION | Product Picture | QUANTITY | US$/UNIT | AMOUNT |
|---|---|---|---|---|---|---|
| | | | | PCS | FOB | US$ |
| 1 | MS2955-30   BIOZOOM PLUS | | | 5000 | US$62.00 | US$310,000.00 |
| | Brushless Motor,  20-level speed | | | | | |
| | 1200RPM-3100RPM/ 20HZ~52HZ | * Add 1pc individually brown box: +usd0.5/set | | | | |
| | Stroke: 9mm | * Change package to case+color sleeve: +usd4.3/set | | | | |
| | Battery life [1500mA]: 1~3hours | * Add 1pc AppTag: +usd0.2/pc | | | | |
| | Stall force: 22lbs | | | | | |
| Packing: | 1 set/Case+Color Sleeve/brown box; 4sets/CTN | | | | | |
| 2 | Tooling cost for BioZoom Plus | | | 1 | US$50,000.00 | US$50,000.00 |
| 3 | MS2959-01   BIOZOOM JR. | | | 250 | US$45.99 | US$11,497.50 |
| | Brushless Motor,  3-level speed | | | | | |
| | 1200/2400/3200RPM | | | | | |
| | Stroke: 6mm | | | | | |
| | Battery life [2000mA]: 1~3hours | | | | | |
| | Stop force: 5KG | | | | | |
| | Length: 153mm | Add 1pc blue massage head | | | | |
| Packing: | 1 set/WHITE GIFT BOX + Color Sleeve + Shrink film; 10sets/CTN | | | | | |

**Shipping Schedule:**

| Shipments | Quantity | Ship Date |
|---|---|---|
| one shipment | 250 | 2020/8/17 if all required Artworks can be provided before 7/22! |

| TOTAL: | | | | 5250 | PCS | US$371,497.50 |
|---|---|---|---|---|---|---|

SAY TOTAL: U.S. DOLLARS THREE HUNDRED AND SEVENTY ONE THOUSAND FOUR HUNDRED AND NINTY SEVEN AND CENTS FIFTY ONLY.

Remarks: If the total amount per shipment is less than US$ 6,000, handling charge US$200 is needed!

*If there are any quality problems, the Buyer should bring forward the complaint within 30 days after receiving cargo and offer specific description on quality defects and evidences such as pictures. Otherwise it will be regarded that the Buyer gives up his quality opposition rights.

*When there is quality dispute on certain batch of products, both parties agree that handling of these products will not affect dealing of other batches of products. The Buyer cannot countervail, without the Seller's permission, the payment of products which may have quality problem with payment of other batches.

  All disputes in connection with this contract or the execution thereof shall be settled by negotiation between two parties. If no settlement can be reached, the case in dispute shall then be submitted for arbitration in US. The decision made by the arbitration organization shall be taken as final and binding upon both parties. The arbitration expenses shall be borne by the losing party unless otherwise awarded by the arbitration organization.

**\*\*\* SHIPPING MARK \*\*\***          Please advise!!!

Accepted & Confirmed by
Addaday Inc.

Victor Yang



ARTIST INT'L CO., LTD.
For and on behalf of
ARTIST INT'L CO., LTD.
Authorized Signature
Fax: 0086-512-8278-5361

1 of 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 7

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT

**jylee@ardentlawgroup.com**

| | |
|---|---|
| **From:** | eras-eva <sales@eras.com.tw> |
| **Sent:** | Tuesday, May 25, 2021 1:33 AM |
| **To:** | Victor Yang |
| **Cc:** | SSJ; eras-eva |
| **Subject:** | Re: Payment of 40k + 40k |

Hi Vic,

Due to the constant pressure from the manufacturer of BIOZOOM PLUS & JR., please understand that we have now paid the overpayment of 17k+ to them as a deposit of BIOZOOM PLUS already.

However, in order to help you selling them more smoothly in the United States, we negotiated the prices with the factory again, they and us are both willing to give you the slashed prices as follows with our greatest sincerity:

- BIOZOOM PLUS: 62.2 => **49.35**  (decreased about 26%)
- BIOZOOM JR.: 48.09 => **38.18** (decreased about 26%)
- BIOZOOM JR. BLE: 53.29 => **42.82** (decreased about 24.5%)

Sincerely hope these cargos can be shipped asap.

- BIOZOOM PLUS: 4068pcs
- BIOZOOM JR.: 340pcs
- BIOZOOM JR. BLE: 1000pcs

We look forward to your reply, thanks!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发件人: sales <sales@eras.com.tw>
日期: 2021年5月21日 星期五 10:50
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

Thanks for your kind reply!

After talking with Jason & Stanley, we have to sorry to say that we cannot agree with you to use the 17k+ on down payment of non-electronics.

This is because the BIOZOOM PLUS & BIOZOOM JR. have been finished productions for more than half a year, the manufacturer is under huge financial pressure, so they desperately need to ship the goods asap even it is only 284pcs this time. It also will be highly appreciated if you'd like to ship more quantities, please just inform us the specific quantity so that we can calculate the required payment amount for you accordingly.

Moreover, if you need the Non-electronics to be produced, please wire another new payment of **USD17,739.48** as 30% deposit for following items. Thanks!

| 21ADD#C2 | 2021/4/19 | EG0066-51 | |
|----------|-----------|-----------|---|
| 21ADD#C2 | 2021/4/19 | EG0180-13 | |
| 21ADD#C2 | 2021/4/19 | EG0070-36 | |
| 21ADD#C2 | 2021/4/19 | EG0146-36 | |
| 21ADD#C2 | 2021/4/19 | EG0063-11 | |
| 21ADD#C2 | 2021/4/19 | EG0071-36 | |

We look forward to your reply soon!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发件人: Victor Yang <vic@addaday.com>
日期: 2021年5月20日 星期四 22:07
收件人: sales <sales@eras.com.tw>
抄送: SSJ <ssj@eras.com.tw>
主题: Re: Payment of 40k + 40k

Please
Use on down payment of none electronics.

We need to make the product ASAP

On May 20, 2021, at 12:30 AM, eras-eva <sales@eras.com.tw> wrote:

Hi Vic,

Good day!
We received the payment of 10K by May-13, many thanks!!!

Then, we have an overpayment of USD17,667.88 in total now, so we'd like to ship about **284pcs BIOZOOM PLUS** to you, please let us know if this is ok.

| 20ADD#C15 | BIOZOOM PLUS | 284 | US$62.20 | US$17,664.80 |
|---|---|---|---|---|

However, if you'd like to ship more quantity, then please be noted the required payment [in Red] as following:

- If ship **500pcs** BIOZOOM PLUS: 500 x USD62.2 – USD17667.88 = **USD13432.12**
- If ship **800pcs** BIOZOOM PLUS: 800 x USD62.2– USD17667.88 = **USD32092.12**

We look forward to your swift reply!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

发件人: sales <sales@eras.com.tw>
日期: 2021年5月11日 星期二 17:03
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

We received a payment of 30k by last week [May-4] from you, thanks!
Then would you please advise us the status of the remaining 10k?

Together with the first 40K, we received 70K in total so for, so here's an update of the payment status for your record [YELLOW BACKGROUND].

| PO# | ITEM. | PAYMENT% | QTY | UNIT PRICE | TOTAL AMOUNT | PAYMENT DATE | AMO |
|---|---|---|---|---|---|---|---|
| 20ADD#C3 | Trio | 100% | 1584 | US$6.48 | US$10,264.32 | 4/22 | 9 |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 3640 | US$44.30 | US$161,252.00 | 3/8 | 61 |
| 20ADD#C24 & 26 | BIOZOOM EDGE | 100% | 1 | US$930.00 | US$930.00 | 4/28 | |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 1000 | US$44.30 | US$44,300.00 | 4/28 | 336 |

3

| 20ADD#C26 | INLAND FREIGHT - BIOZOOM EDGE | 100% | 1 | US$580.00 | US$580.00 | 5/4 | |
| 21ADD#C2 | Knot Bad Gen 3 | 30% | 7500 | US$4.93 | US$11,092.50 | 5/4 | 11 |

**The total deducted amount is USD62332.12, the remaining amount is USD7667.88.**

Then, if shipping 800pcs BIOZOOM PLUS, there is still a shortfall of **USD 42092.12** [USD49760-USD7667.88], please check and let us know your comments. Thanks!

| 20ADD#C15 | BIOZOOM PLUS | | 100% | 800 | US$62.20 | US$49,760.00 |

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发人: sales <sales@eras.com.tw>
日期: 2021年4月29日 星期四 16:27
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

We received a payment of USD40,000 yesterday, thanks!

For the second 40k, please help to arrange the payment before **May 3rd [China time] at latest**, otherwise, we'll miss the booked shipping schedule as following:

ETD: 5/10
ETA: 5/11

ERAS EVA
Thanks & Best regards
**ERAS SPORTING CO., LTD.**
TEL: 86-512-82785358 # 8019
FAX: 86-512-82785361
E-mail: sales@eras.com.tw
Please review more information from www.eras.com.tw
ERAS office will be CLOSED starting May 1 thru May 5 for Labor Day, please excuse us for not responding to your emails in a timely manner.

---

发人: sales <sales@eras.com.tw>
日期: 2021年4月28日 星期三 10:12
收件人: Victor Yang <vic@addaday.com>

4

抄送: sales <sales@eras.com.tw>, SSJ <ssj@eras.com.tw>
主題: Payment of 40k + 40k

Hi Vic,

Jason just told me that you wired 40k+40k to us, thanks! We'll pay attention to it then.

However, after calculating, if this payment will be used for EDGE, KNOT BAD 3 & PLUS, then it only enough to pay the following details and there is still a shortfall of **$31,512.12** if you'd like to ship 800pcs BIOZOOM PLUS.

| PO# | ITEM DES. | PAYMENT% | QTY | UNIT PRICE | TOTAL AMO |
|---|---|---|---|---|---|
| 20ADD#C3 | Trio | 100% | 1584 | US$6.48 | US$10,264. |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 3640 | US$44.30 | US$161,252. |
| 20ADD#C24 & 26 | BIOZOOM EDGE | 100% | 1 | US$930.00 | US$930.00 |
| 20ADD#C15 | BIOZOOM PLUS | 100% | 800 | US$62.20 | US$49,760. |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 1000 | US$44.30 | US$44,300. |
| 21ADD#C2 | Knot Bad Gen 3 | 30% | 7500 | US$4.93 | US$11,092. |

Meanwhile, how would you like to ship 800pcs BIOZOOM PLUS? By air or sea? The total volume is 7.33CBM.
Please check and comment, thanks!

ERAS EVA
Thanks & Best regards
**ERAS SPORTING CO., LTD.**
TEL: 86-512-82785358 # 8019
FAX: 86-512-82785361
E-mail: sales@eras.com.tw
Please review more information from www.eras.com.tw
ERAS office will be CLOSED starting May 1 thru May 5 for Labor Day, please excuse us for not responding to your emails in a timely manner.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  8

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT



**ARTIST INT'L CO., LTD.**
60 Market Square, P.O. Box 364, Belize City, Belize
Tel: 886-2-2507-7872; Fax: 886-2-2507-702<sup></sup>

## Sales Confirmation
**Updated on 9/14!**

To:
Addaday Inc.
2500 Broadway F125, Santa Monica,
CA90404, USA

| | |
|---|---|
| Date: | 17/Aug/20 |
| PI# | 20ADD#C20 |
| Tel: | 310-905-2737 |
| Fax: | |

| | |
|---|---|
| SHIPMENT: | 55 days after PI is signed! |
| SHIP FROM: | Ningbo     China |
| TO: | Los Angeles    USA |
| PAYMENT: | T/T 90 DAYS |

| | Item No. | DESCRIPTION | Product Picture | QUANTITY | US$/UNIT | AMOUNT |
|---|---|---|---|---|---|---|
| | | | | PCS | FOB | US$ |
| 1 | MS2959-01    BioZoom Jr.<br>Brushless Motor,  3-level speed<br>1200/2400/3200RPM<br>Stroke: 6mm<br>Battery life [2000mA]: 1~3hours<br>Stall force: 5KG<br>Length: 153mm<br>Add 15% strength<br>Add 1pc Blue Massage Head<br>Add 1pc individually brown box | | 760 | US$48.09 | US$36,548.40 |
| Packing: | 1 set/WHITE GIFT BOX + Color Sleeve + Shrink film/Brown Box; 20sets/CTN | | | | | |

| TOTAL: | | | 760 | PCS | US$36,548.40 |
|---|---|---|---|---|---|

**SAY TOTAL: U.S. DOLLARS THIRTY SIX THOUSAND FIVE HUNDRED AND FORTY EIGHT AND CENTS FORTY ONLY.**

**Remarks: If the total amount per shipment is less than US$ 6,000, handling charge US$200 is needed!**

*If there are any quality problems, the Buyer should bring forward the complaint within 30 days after receiving cargo and offer specific description on quality defects and evidences such as pictures. Otherwise it will be regarded that the Buyer gives up his quality opposition rights.

*When there is quality dispute on certain batch of products, both parties agree that handling of these products will not affect dealing of other batches of products. The Buyer cannot countervail, without the Seller's permission, the payment of products which may have quality problem with payment of other batches.

All disputes in connection with this contract or the execution thereof shall be settled by negotiation between two parties. If no settlement can be reached, the case in dispute shall then be submitted for arbitration in US. The decision made by the arbitration organization shall be taken as final and binding upon both parties. The arbitration expenses shall be borne by the losing party unless otherwise awarded by the arbitration organization.

**\*\*\* SHIPPING MARK \*\*\***                    Please advise!!!

Accepted & Confirmed by
Addaday Inc.

ARTIST INT'L CO., LTD.

For and on behalf of
ARTIST INT'L CO., LTD.

Authorized Signature

_____                    _____

Victor Yang                                Fax: 0086-512-8278-5361

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 9

17

**jylee@ardentlawgroup.com**

| | |
|---|---|
| **From:** | eras-eva <sales@eras.com.tw> |
| **Sent:** | Tuesday, May 25, 2021 1:33 AM |
| **To:** | Victor Yang |
| **Cc:** | SSJ; eras-eva |
| **Subject:** | Re: Payment of 40k + 40k |

Hi Vic,

Due to the constant pressure from the manufacturer of BIOZOOM PLUS & JR., please understand that we have now paid the overpayment of 17k+ to them as a deposit of BIOZOOM PLUS already.

However, in order to help you selling them more smoothly in the United States, we negotiated the prices with the factory again, they and us are both willing to give you the slashed prices as follows with our greatest sincerity:

- BIOZOOM PLUS: 62.2 => **49.35**  (decreased about 26%)
- BIOZOOM JR.: 48.09 => **38.18** (decreased about 26%)
- BIOZOOM JR. BLE: 53.29 => **42.82** (decreased about 24.5%)

Sincerely hope these cargos can be shipped asap.

- BIOZOOM PLUS: 4068pcs
- BIOZOOM JR.: 340pcs
- BIOZOOM JR. BLE: 1000pcs

We look forward to your reply, thanks!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发件人: sales <sales@eras.com.tw>
日期: 2021年5月21日 星期五 10:50
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

Thanks for your kind reply!

1

After talking with Jason & Stanley, we have to sorry to say that we cannot agree with you to use the 17k+ on down payment of non-electronics.

This is because the BIOZOOM PLUS & BIOZOOM JR. have been finished productions for more than half a year, the manufacturer is under huge financial pressure, so they desperately need to ship the goods asap even it is only 284pcs this time. It also will be highly appreciated if you'd like to ship more quantities, please just inform us the specific quantity so that we can calculate the required payment amount for you accordingly.

Moreover, if you need the Non-electronics to be produced, please wire another new payment of **USD17,739.48** as 30% deposit for following items. Thanks!

| | | | |
|---|---|---|---|
| 21ADD#C2 | 2021/4/19 | EG0066-51 | |
| 21ADD#C2 | 2021/4/19 | EG0180-13 | |
| 21ADD#C2 | 2021/4/19 | EG0070-36 | |
| 21ADD#C2 | 2021/4/19 | EG0146-36 | |
| 21ADD#C2 | 2021/4/19 | EG0063-11 | |
| 21ADD#C2 | 2021/4/19 | EG0071-36 | |

We look forward to your reply soon!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发件人: Victor Yang <vic@addaday.com>
日期: 2021年5月20日 星期四 22:07
收件人: sales <sales@eras.com.tw>
抄送: SSJ <ssj@eras.com.tw>
主题: Re: Payment of 40k + 40k

```
Please
Use on down payment of none electronics.

We need to make the product ASAP
```

On May 20, 2021, at 12:30 AM, eras-eva <sales@eras.com.tw> wrote:

Hi Vic,

Good day!
We received the payment of 10K by May-13, many thanks!!!

Then, we have an overpayment of USD17,667.88 in total now, so we'd like to ship about **284pcs BIOZOOM PLUS** to you, please let us know if this is ok.

| 20ADD#C15 | BIOZOOM PLUS | 284 | US$62.20 | US$17,664.80 |

However, if you'd like to ship more quantity, then please be noted the required payment [in Red] as following:

- If ship **500pcs** BIOZOOM PLUS: 500 x USD62.2 – USD17667.88 = **USD13432.12**
- If ship **800pcs** BIOZOOM PLUS: 800 x USD62.2– USD17667.88 = **USD32092.12**

We look forward to your swift reply!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发件人: sales <sales@eras.com.tw>
日期: 2021年5月11日 星期二 17:03
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

We received a payment of 30k by last week [May-4] from you, thanks!
Then would you please advise us the status of the remaining 10k?

Together with the first 40K, we received 70K in total so for, so here's an update of the payment status for your record [==YELLOW BACKGROUND==].

| PO# | ITEM. | PAYMENT% | QTY | UNIT PRICE | TOTAL AMOUNT | PAYMENT DATE | AMO |
|-----|-------|----------|-----|------------|--------------|--------------|-----|
| 20ADD#C3 | Trio | 100% | 1584 | US$6.48 | US$10,264.32 | 4/22 | 9 |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 3640 | US$44.30 | US$161,252.00 | 3/8 | 61 |
| 20ADD#C24 & 26 | BIOZOOM EDGE | 100% | 1 | US$930.00 | US$930.00 | 4/28 | |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 1000 | US$44.30 | US$44,300.00 | 4/28 | 336 |

| 20ADD#C26 | INLAND FREIGHT - BIOZOOM EDGE | 100% | 1 | US$580.00 | US$580.00 | 5/4 | |
| 21ADD#C2 | Knot Bad Gen 3 | 30% | 7500 | US$4.93 | US$11,092.50 | 5/4 | 11 |

The total deducted amount is USD62332.12, the remaining amount is USD7667.88.

Then, if shipping 800pcs BIOZOOM PLUS, there is still a shortfall of **USD 42092.12** [USD49760-USD7667.88], please check and let us know your comments. Thanks!

| 20ADD#C15 | BIOZOOM PLUS | | 100% | 800 | US$62.20 | US$49,760.00 |

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发人: sales <sales@eras.com.tw>
日期: 2021年4月29日 星期四 16:27
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

We received a payment of USD40,000 yesterday, thanks!

For the second 40k, please help to arrange the payment before **May 3rd [China time] at latest**, otherwise, we'll miss the booked shipping schedule as following:

ETD: 5/10
ETA: 5/11

ERAS EVA
Thanks & Best regards
**ERAS SPORTING CO., LTD.**
TEL: 86-512-82785358 # 8019
FAX: 86-512-82785361
E-mail: sales@eras.com.tw
Please review more information from www.eras.com.tw
ERAS office will be CLOSED starting May 1 thru May 5 for Labor Day, please excuse us for not responding to your emails in a timely manner.

---

发人: sales <sales@eras.com.tw>
日期: 2021年4月28日 星期三 10:12
收件人: Victor Yang <vic@addaday.com>

4

抄送: sales <sales@eras.com.tw>, SSJ <ssj@eras.com.tw>
主題: Payment of 40k + 40k

Hi Vic,

Jason just told me that you wired 40k+40k to us, thanks! We'll pay attention to it then.

However, after calculating, if this payment will be used for EDGE, KNOT BAD 3 & PLUS, then it only enough to pay the following details and there is still a shortfall of **$31,512.12** if you'd like to ship 800pcs BIOZOOM PLUS.

| PO# | ITEM DES. | PAYMENT% | QTY | UNIT PRICE | TOTAL AMO |
|---|---|---|---|---|---|
| 20ADD#C3 | Trio | 100% | 1584 | US$6.48 | US$10,264. |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 3640 | US$44.30 | US$161,252. |
| 20ADD#C24 & 26 | BIOZOOM EDGE | 100% | 1 | US$930.00 | US$930.00 |
| 20ADD#C15 | BIOZOOM PLUS | 100% | 800 | US$62.20 | US$49,760. |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 1000 | US$44.30 | US$44,300. |
| 21ADD#C2 | Knot Bad Gen 3 | 30% | 7500 | US$4.93 | US$11,092. |

Meanwhile, how would you like to ship 800pcs BIOZOOM PLUS? By air or sea? The total volume is 7.33CBM.
Please check and comment, thanks!

ERAS EVA
Thanks & Best regards
**ERAS SPORTING CO., LTD.**
TEL: 86-512-82785358 # 8019
FAX: 86-512-82785361
E-mail: sales@eras.com.tw
Please review more information from www.eras.com.tw
ERAS office will be CLOSED starting May 1 thru May 5 for Labor Day, please excuse us for not responding to your emails in a timely manner.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  10

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT



**ARTIST INT'L CO., LTD.**
60 Market Square, P.O. Box 364, Belize City, Belize
Tel: 886-2-2507-7872; Fax: 886-2-2507-702(

## Sales Confirmation

| | |
|---|---|
| To: | Date: 16/Sep/20 |
| Addaday Inc. | PI# 20ADD#C23 |
| 2500 Broadway F125, Santa Monica, | Tel: 310-905-2737 |
| CA90404, USA | Fax: |

| | |
|---|---|
| SHIPMENT: | 45 days after the 30% deposit |
| SHIP FROM: | Ningbo        China |
| TO: | Los Angeles    USA |
| PAYMENT: | T/T 90 DAYS |

| | Item No. | DESCRIPTION | Product Picture | QUANTITY | US$/UNIT | AMOUNT |
|---|---|---|---|---|---|---|
| | | | | PCS | FOB | US$ |
| 1 | MS2959-01    BioZoom Jr. | | | 1000 | US$53.09 | US$53,090.00 |
| | Brushless Motor,  3-level speed | | | | | |
| | 1200/2400/3200RPM | | | | | |
| | Stroke: 6mm | | | | | |
| | Battery life [2000mA]: 1~3hours | | | | | |
| | Stall force: 5KG | | | | | |
| | Length: 153mm | | | | | |
| | Add 15% strength | | | | | |
| | Add 1pc Blue Massage Head | | | | | |
| | Add 1pc individually brown box | | | | | |
| | Add Bluetooth Function | | | | | |
| Packing: | 1 set/WHITE GIFT BOX + Color Sleeve + Shrink film/Brown Box; 20sets/CTN | | | | | |

| TOTAL: | | | | 1000 | PCS | US$53,090.00 |
|---|---|---|---|---|---|---|

SAY TOTAL: U.S. DOLLARS FIFTY THREE THOUSAND AND NINETY ONLY.

Remarks: If the total amount per shipment is less than US$ 6,000, handling charge US$200 is needed!
 *If there are any quality problems, the Buyer should bring forward the complaint within 30 days after receiving cargo and offer specific description on quality defects and evidences such as pictures. Otherwise it will be regarded that the Buyer gives up his quality opposition rights.
 *When there is quality dispute on certain batch of products, both parties agree that handling of these products will not affect dealing of other batches of products. The Buyer cannot countervail, without the Seller's permission, the payment of products which may have quality problem with payment of other batches.
 All disputes in connection with this contract or the execution thereof shall be settled by negotiation between two parties. If no settlement can be reached, the case in dispute shall then be submitted for arbitration in US. The decision made by the arbitration organization shall be taken as final and binding upon both parties. The arbitration expenses shall be borne by the losing party unless otherwise awarded by the arbitration organization.

**\*\*\* SHIPPING MARK \*\*\***                       Please advise!!!

Accepted & Confirmed by
Addaday Inc.                                              ARTIST INT'L CO., LTD.

*For and on behalf of*
**ARTIST INT'L CO., LTD.**

_____                      _____
                                                           Authorized Signature

Victor Yang                                              Fax: 0086-512-8278-5361

1 of 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  11

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT

**jylee@ardentlawgroup.com**

| | |
|---|---|
| **From:** | eras-eva <sales@eras.com.tw> |
| **Sent:** | Tuesday, May 25, 2021 1:33 AM |
| **To:** | Victor Yang |
| **Cc:** | SSJ; eras-eva |
| **Subject:** | Re: Payment of 40k + 40k |

Hi Vic,

Due to the constant pressure from the manufacturer of BIOZOOM PLUS & JR., please understand that we have now paid the overpayment of 17k+ to them as a deposit of BIOZOOM PLUS already.

However, in order to help you selling them more smoothly in the United States, we negotiated the prices with the factory again, they and us are both willing to give you the slashed prices as follows with our greatest sincerity:

- BIOZOOM PLUS: 62.2 => **49.35**  (decreased about 26%)
- BIOZOOM JR.: 48.09 => **38.18** (decreased about 26%)
- BIOZOOM JR. BLE: 53.29 => **42.82** (decreased about 24.5%)

Sincerely hope these cargos can be shipped asap.

- BIOZOOM PLUS: 4068pcs
- BIOZOOM JR.: 340pcs
- BIOZOOM JR. BLE: 1000pcs

We look forward to your reply, thanks!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

发件人: sales <sales@eras.com.tw>
日期: 2021年5月21日 星期五 10:50
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

Thanks for your kind reply!

1

After talking with Jason & Stanley, we have to sorry to say that we cannot agree with you to use the 17k+ on down payment of non-electronics.

This is because the BIOZOOM PLUS & BIOZOOM JR. have been finished productions for more than half a year, the manufacturer is under huge financial pressure, so they desperately need to ship the goods asap even it is only 284pcs this time. It also will be highly appreciated if you'd like to ship more quantities, please just inform us the specific quantity so that we can calculate the required payment amount for you accordingly.

Moreover, if you need the Non-electronics to be produced, please wire another new payment of **USD17,739.48** as 30% deposit for following items. Thanks!

| | | | |
|---|---|---|---|
| 21ADD#C2 | 2021/4/19 | EG0066-51 | |
| 21ADD#C2 | 2021/4/19 | EG0180-13 | |
| 21ADD#C2 | 2021/4/19 | EG0070-36 | |
| 21ADD#C2 | 2021/4/19 | EG0146-36 | |
| 21ADD#C2 | 2021/4/19 | EG0063-11 | |
| 21ADD#C2 | 2021/4/19 | EG0071-36 | |

We look forward to your reply soon!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发件人: Victor Yang <vic@addaday.com>
日期: 2021年5月20日 星期四 22:07
收件人: sales <sales@eras.com.tw>
抄送: SSJ <ssj@eras.com.tw>
主题: Re: Payment of 40k + 40k

Please
Use on down payment of none electronics.

We need to make the product ASAP

On May 20, 2021, at 12:30 AM, eras-eva <sales@eras.com.tw> wrote:

Hi Vic,

Good day!
We received the payment of 10K by May-13, many thanks!!!

Then, we have an overpayment of USD17,667.88 in total now, so we'd like to ship about **284pcs BIOZOOM PLUS** to you, please let us know if this is ok.

| 20ADD#C15 | BIOZOOM PLUS | 284 | US$62.20 | US$17,664.80 |
|---|---|---|---|---|

However, if you'd like to ship more quantity, then please be noted the required payment [in Red] as following:

- If ship **500pcs** BIOZOOM PLUS: 500 x USD62.2 – USD17667.88 = **USD13432.12**
- If ship **800pcs** BIOZOOM PLUS: 800 x USD62.2– USD17667.88 = **USD32092.12**

We look forward to your swift reply!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

发件人: sales <sales@eras.com.tw>
日期: 2021年5月11日 星期二 17:03
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

We received a payment of 30k by last week [May-4] from you, thanks!
Then would you please advise us the status of the remaining 10k?

Together with the first 40K, we received 70K in total so for, so here's an update of the payment status for your record [YELLOW BACKGROUND].

| PO# | ITEM. | PAYMENT% | QTY | UNIT PRICE | TOTAL AMOUNT | PAYMENT DATE | AMO |
|---|---|---|---|---|---|---|---|
| 20ADD#C3 | Trio | 100% | 1584 | US$6.48 | US$10,264.32 | 4/22 | 9 |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 3640 | US$44.30 | US$161,252.00 | 3/8 | 61 |
| 20ADD#C24 & 26 | BIOZOOM EDGE | 100% | 1 | US$930.00 | US$930.00 | 4/28 | |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 1000 | US$44.30 | US$44,300.00 | 4/28 | 336 |

3

| 20ADD#C26 | INLAND FREIGHT - BIOZOOM EDGE | 100% | 1 | US$580.00 | US$580.00 | 5/4 | |
| 21ADD#C2 | Knot Bad Gen 3 | 30% | 7500 | US$4.93 | US$11,092.50 | 5/4 | 11 |

The total deducted amount is USD62332.12, the remaining amount is USD7667.88.

Then, if shipping 800pcs BIOZOOM PLUS, there is still a shortfall of **USD 42092.12** [USD49760-USD7667.88], please check and let us know your comments. Thanks!

| 20ADD#C15 | BIOZOOM PLUS | | 100% | 800 | US$62.20 | US$49,760.00 |

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019


---

发人: sales <sales@eras.com.tw>
日期: 2021年4月29日 星期四 16:27
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

We received a payment of USD40,000 yesterday, thanks!

For the second 40k, please help to arrange the payment before **May 3rd [China time] at latest**, otherwise, we'll miss the booked shipping schedule as following:

ETD: 5/10
ETA: 5/11

ERAS EVA
Thanks & Best regards
**ERAS SPORTING CO., LTD.**
TEL: 86-512-82785358 # 8019
FAX: 86-512-82785361
E-mail: sales@eras.com.tw
Please review more information from www.eras.com.tw
ERAS office will be CLOSED starting May 1 thru May 5 for Labor Day, please excuse us for not responding to your emails in a timely manner.


---

发人: sales <sales@eras.com.tw>
日期: 2021年4月28日 星期三 10:12
收件人: Victor Yang <vic@addaday.com>

4

抄送: sales <sales@eras.com.tw>, SSJ <ssj@eras.com.tw>
主題: Payment of 40k + 40k

Hi Vic,

Jason just told me that you wired 40k+40k to us, thanks! We'll pay attention to it then.

However, after calculating, if this payment will be used for EDGE, KNOT BAD 3 & PLUS, then it only enough to pay the following details and there is still a shortfall of **$31,512.12** if you'd like to ship 800pcs BIOZOOM PLUS.

| PO# | ITEM DES. | PAYMENT% | QTY | UNIT PRICE | TOTAL AMO |
|---|---|---|---|---|---|
| 20ADD#C3 | Trio | 100% | 1584 | US$6.48 | US$10,264. |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 3640 | US$44.30 | US$161,252. |
| 20ADD#C24 & 26 | BIOZOOM EDGE | 100% | 1 | US$930.00 | US$930.00 |
| 20ADD#C15 | BIOZOOM PLUS | 100% | 800 | US$62.20 | US$49,760. |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 1000 | US$44.30 | US$44,300. |
| 21ADD#C2 | Knot Bad Gen 3 | 30% | 7500 | US$4.93 | US$11,092. |

Meanwhile, how would you like to ship 800pcs BIOZOOM PLUS? By air or sea? The total volume is 7.33CBM.
Please check and comment, thanks!

ERAS EVA
Thanks & Best regards
**ERAS SPORTING CO., LTD.**
TEL: 86-512-82785358 # 8019
FAX: 86-512-82785361
E-mail: sales@eras.com.tw
Please review more information from www.eras.com.tw
ERAS office will be CLOSED starting May 1 thru May 5 for Labor Day, please excuse us for not responding to your emails in a timely manner.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  12

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT



**ARTIST INT'L CO., LTD.**
60 Market Square, P.O. Box 364, Belize City, Belize
Tel: 886-2-2507-7872; Fax: 886-2-2507-702⁹

## Sales Confirmation

| | |
|---|---|
| To: | Date:        22/Sep/20 |
| Addaday Inc. | PI#          20ADD#C25 |
| 2500 Broadway F125, Santa Monica, | Tel:          310-905-2737 |
| CA90404, USA | Fax: |

SHIPMENT:     TBD
SHIP FROM:    Xiamen&Ningb          China
TO:                Los Angeles      USA
PAYMENT:      T/T 90 DAYS

| Item No. | DESCRIPTION | Product Picture | QUANTITY | US$/UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | | PCS | FOB | US$ |
| 1 | Massage Heads - RED | | 200 | 0.93 | US$186.00 |
| 2 | Massage Heads - WHITE | | 50 | 0.24 | US$12.00 |
| 3 | Massage Heads - WHITE | | 50 | 0.23 | US$11.50 |
| 4 | Charger for BIOZOOM EDGE | | 200 | 3.22 | US$644.00 |
| 5 | Charger for BIOZOOM PLUS | | 100 | 2.82 | US$282.00 |
| TOTAL: | | | 600 | PCS | US$1,135.50 |

**SAY TOTAL: U.S. DOLLARS ONE THOUSAND ONE HUNDRED AND THIRTY FIVE AND CENTS FIFTY ONLY.**
Remarks: If the total amount per shipment is less than US$ 6,000, handling charge US$200 is needed!
 *If there are any quality problems, the Buyer should bring forward the complaint within 30 days after receiving cargo and offer specific description on quality defects and evidences such as pictures. Otherwise it will be regarded that the Buyer gives up his quality opposition rights.
 *When there is quality dispute on certain batch of products, both parties agree that handling of these products will not affect dealing of other batches of products. The Buyer cannot countervail, without the Seller's permission, the payment of products which may have quality problem with payment of other batches.
 All disputes in connection with this contract or the execution thereof shall be settled by negotiation between two parties. If no settlement can be reached, the case in dispute shall then be submitted for arbitration in US. The decision made by the arbitration organization shall be taken as final and binding upon both parties. The arbitration expenses shall be borne by the losing party unless otherwise awarded by the arbitration organization.

**\*\*\* SHIPPING MARK \*\*\***                    Please advise!!!

Accepted & Confirmed by
Addaday Inc.

                                        ARTIST INT'L CO., LTD.

                                        For and on behalf of
                                        ARTIST INT'L CO., LTD.

                                        Authorized Signature

**Victor Yang**                          Fax: 0086-512-8278-5361

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  13

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT

**ARTIST INT'L CO., LTD.**
60 Market Square, P.O. Box 364, Belize City, Belize
Tel: 886-2-2507-7872; Fax: 886-2-2507-7024

## Sales Confirmation
**UPDATED ON 10/16!**

To:
Addaday Inc.
2500 Broadway F125, Santa Monica,
CA90404, USA

Date:  12/Oct/20
PI#  20ADD#C26
Tel:  310-905-2737
Fax:

SHIPMENT:  12/5 [signed PI & 25% deposit will be required before 10/13!]
SHIP FROM:  Xiamen    China
TO:  Los Angeles   USA
PAYMENT:  T/T 90 DAYS

| | Item No. | DESCRIPTION | Product Picture | QUANTITY | US$/UNIT | AMOUNT |
|---|---|---|---|---|---|---|
| | | | | PCS | FOB | US$ |
| 1 | EG0103-13   BIOZOOM EDGE | 1. Shell Material:ABS,  Massage head material: Nylon & EVA 2. Charger: Input: AC 100-240V~0.5A, Frequency: 50/60Hz 3.  Interchangeable Applicators (x5) 4.  Battery capacity: 14.4V/2400mA  (18650*4pcs) 5. Charging time: 2.5h 6. 5 Speed: 1200-2900 rpm; 3 auto modes 7. Amplitude: 10mm 8. Default working time: 10 min 9. Product net weight: 1KG; Product with color box weight: 1.8kgs 10. Product size [no attachments]: 26.5 x 16.1 x 6.5 cm 11. Using time after fully charged: 3–6h *6h for level 1 speed *5h for level 2 speed *4h for level 3 speed *3.5h for level 4 speed *3h for level 5 speed 12. Bluetooth The tooling cost has been included in the prices, it can be deducted from the FOB price once the order quantity reaches 50,000sets. | | 7000 | 44.3 | US$310,100.00 |
| | Packing: | 1 PC/Color Box; 2pcs/carton | | | | |

| TOTAL: | | 7000 | PCS | US$310,100.00 |
|---|---|---|---|---|

SAY TOTAL: U.S. DOLLARS THREE HUNDRED AND TEN THOUSAND, ONE HUNDRED ONLY.
Remarks: If the total amount per shipment is less than US$ 6,000, handling charge US$200 is needed!
 *If there are any quality problems, the Buyer should bring forward the complaint within 30 days after receiving cargo and offer specific description on quality defects and evidences such as pictures. Otherwise it will be regarded that the Buyer gives up his quality opposition rights.
 *When there is quality dispute on certain batch of products, both parties agree that handling of these products will not affect dealing of other batches of products. The Buyer cannot countervail, without the Seller's permission, the payment of products which may have quality problem with payment of other batches.
 All disputes in connection with this contract or the execution thereof shall be settled by negotiation between two parties. If no settlement can be reached, the case in dispute shall then be submitted for arbitration in US. The decision made by the arbitration organization shall be taken as final and binding upon both parties. The arbitration expenses shall be borne by the losing party unless otherwise awarded by the arbitration organization.

**\*\*\* SHIPPING MARK \*\*\***          Please advise!!!

Accepted & Confirmed by
Addaday Inc.

ARTIST INT'L CO., LTD.

*For and on behalf of*
**ARTIST INT'L CO., LTD.**
*Authorized Signature*

Victor Yang

Fax: 0086-512-8278-5361

1 of 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  14

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT

**jylee@ardentlawgroup.com**

| From: | eras-eva <sales@eras.com.tw> |
|---|---|
| Sent: | Tuesday, May 25, 2021 8:46 PM |
| To: | Victor Yang |
| Cc: | SSJ; eras-eva |
| Subject: | Re: Payment of 40k + 40k |

Hi Vic,

After checking, please find the updated unit prices as following:

- BIOZOOM EDGE: <u>**USD 42.0/SET**</u> [equipped with IC made in China]
- BIO6: <u>**USD 33.1/SET**</u> [equipped with IC made in China]

Due to the shortage of IC in the market and considering of your price reduction request, we'll use the IC made in China instead of imported IC for both 2 items for making better prices for you. However, after checking, these locally manufactured IC can match the current APP functions and make the products work normally. But if the APP needs to be upgraded in the future, we may need to find new larger-capacity ICs to match the upgraded APP.

Important note: the prices can be only valid to **June 3rd** due to the fluctuated IC market…and below lead time for both items are for your reference:

- BIOZOOM EDGE: 6000 PCS – 2 months after 30% deposit received
- BIO6: 2000 PCS – 2 months after 30% deposit received

Besides, we still have 2360pcs of BIOZOOM EDGE in stock, for the purpose of shippping them out as soon as possible, we'd also like to support you by decreasing the unit prices from USD44.3/SET to USD42/SET for these stocks… so the total amount would be USD85,120 as below details.

| PO# | ITEM NAME. | PAYMENT% | QTY | UNIT PRICE | TOTAL AMOUNT | PAID | BALANC |
|---|---|---|---|---|---|---|---|
| 20ADD#C26 | BIOZOOM EDGE | 100% | 2360 | US$42.00 | US$99,120.00 | US$14,000.00 | US$85,1 |

Please check and let us know your comments about these! Thanks!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发件人: Victor Yang <vic@addaday.com>
日期: 2021年5月25日 星期二 22:16
收件人: sales <sales@eras.com.tw>

1

**抄送:** SSJ <ssj@eras.com.tw>
**主題:** Re: Payment of 40k + 40k

We desperately need final biozoom edge and bio6 pricing.

We will arrange for plus/jr/jr shipping ASAP.

On May 25, 2021, at 1:33 AM, eras-eva <sales@eras.com.tw> wrote:

Hi Vic,

Due to the constant pressure from the manufacturer of BIOZOOM PLUS & JR., please understand that we have now paid the overpayment of 17k+ to them as a deposit of BIOZOOM PLUS already.

However, in order to help you selling them more smoothly in the United States, we negotiated the prices with the factory again, they and us are both willing to give you the slashed prices as follows with our greatest sincerity:

- BIOZOOM PLUS: 62.2 => **49.35**  (decreased about 26%)
- BIOZOOM JR.: 48.09 => **38.18** (decreased about 26%)
- BIOZOOM JR. BLE: 53.29 => **42.82** (decreased about 24.5%)

Sincerely hope these cargos can be shipped asap.

- BIOZOOM PLUS: 4068pcs
- BIOZOOM JR.: 340pcs
- BIOZOOM JR. BLE: 1000pcs

We look forward to your reply, thanks!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

**发件人:** sales <sales@eras.com.tw>
**日期:** 2021年5月21日 星期五 10:50
**收件人:** Victor Yang <vic@addaday.com>

2

抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主題: Re: Payment of 40k + 40k

Hi Vic,

Thanks for your kind reply!
After talking with Jason & Stanley, we have to sorry to say that we cannot agree with you to use the 17k+ on down payment of non-electronics.

This is because the BIOZOOM PLUS & BIOZOOM JR. have been finished productions for more than half a year, the manufacturer is under huge financial pressure, so they desperately need to ship the goods asap even it is only 284pcs this time. It also will be highly appreciated if you'd like to ship more quantities, please just inform us the specific quantity so that we can calculate the required payment amount for you accordingly.

Moreover, if you need the Non-electronics to be produced, please wire another new payment of **USD17,739.48** as 30% deposit for following items. Thanks!
<image001.jpg>

We look forward to your reply soon!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发件人: Victor Yang <vic@addaday.com>
日期: 2021年5月20日 星期四 22:07
收件人: sales <sales@eras.com.tw>
抄送: SSJ <ssj@eras.com.tw>
主題: Re: Payment of 40k + 40k

Please
Use on down payment of none electronics.

We need to make the product ASAP

> On May 20, 2021, at 12:30 AM, eras-eva <sales@eras.com.tw> wrote:
>
> Hi Vic,
>
> Good day!
> We received the payment of 10K by May-13, many thanks!!!

3

Then, we have an overpayment of USD17,667.88 in total now, so we'd like to ship about **284pcs BIOZOOM PLUS** to you, please let us know if this is ok.

| 20ADD#C15 | BIOZOOM PLUS | 284 | US$62.20 | US$17,664.80 |
| --- | --- | --- | --- | --- |

However, if you'd like to ship more quantity, then please be noted the required payment [in Red] as following:

- If ship **500pcs** BIOZOOM PLUS: 500 x USD62.2 – USD17667.88 = **USD13432.12**
- If ship **800pcs** BIOZOOM PLUS: 800 x USD62.2– USD17667.88 = **USD32092.12**

We look forward to your swift reply!

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发件人: sales <sales@eras.com.tw>
日期: 2021年5月11日 星期二 17:03
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

We received a payment of 30k by last week [May-4] from you, thanks!
Then would you please advise us the status of the remaining 10k?

Together with the first 40K, we received 70K in total so for, so here's an update of the payment status for your record [YELLOW BACKGROUND].

| PO# | ITEM. | PAYMENT% | QTY | UNIT PRICE | TOTAL AMOUNT | PAYMENT DATE |
| --- | --- | --- | --- | --- | --- | --- |
| 20ADD#C3 | Trio | 100% | 1584 | US$6.48 | US$10,264.32 | 4/2... |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 3640 | US$44.30 | US$161,252.00 | 3/8... |
| 20ADD#C24 & 26 | BIOZOOM EDGE | 100% | 1 | US$930.00 | US$930.00 | 4/28 |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 1000 | US$44.30 | US$44,300.00 | 4/28 |
| 20ADD#C26 | INLAND FREIGHT - BIOZOOM EDGE | 100% | 1 | US$580.00 | US$580.00 | 5/4 |
| 21ADD#C2 | Knot Bad Gen 3 | 30% | 7500 | US$4.93 | US$11,092.50 | 5/4 |

The total deducted amount is USD62332.12, the remaining amount is USD7667.88.

4

Then, if shipping 800pcs BIOZOOM PLUS, there is still a shortfall of **USD 42092.12** [USD49760-USD7667.88], please check and let us know your comments. Thanks!

| 20ADD#C15 | BIOZOOM PLUS | 100% | 800 | US$62.20 | US$49, |
|---|---|---|---|---|---|

Thanks & Best regards
ERAS/Eva
**ERAS SPORTING CO., LTD**
Office: 86-512-82785358 ext. 8019

---

发件人: sales <sales@eras.com.tw>
日期: 2021年4月29日 星期四 16:27
收件人: Victor Yang <vic@addaday.com>
抄送: SSJ <ssj@eras.com.tw>, sales <sales@eras.com.tw>
主题: Re: Payment of 40k + 40k

Hi Vic,

We received a payment of USD40,000 yesterday, thanks!

For the second 40k, please help to arrange the payment before **May 3rd [China time] at latest**, otherwise, we'll miss the booked shipping schedule as following:

ETD: 5/10
ETA: 5/11

ERAS EVA
Thanks & Best regards
**ERAS SPORTING CO., LTD.**
TEL: 86-512-82785358 # 8019
FAX: 86-512-82785361
E-mail: sales@eras.com.tw
Please review more information from www.eras.com.tw
ERAS office will be CLOSED starting May 1 thru May 5 for Labor Day, please excuse us for not responding to your emails in a timely manner.

---

发件人: sales <sales@eras.com.tw>
日期: 2021年4月28日 星期三 10:12
收件人: Victor Yang <vic@addaday.com>
抄送: sales <sales@eras.com.tw>, SSJ <ssj@eras.com.tw>
主题: Payment of 40k + 40k

Hi Vic,

5

Jason just told me that you wired 40k+40k to us, thanks! We'll pay attention to it then.

However, after calculating, if this payment will be used for EDGE, KNOT BAD 3 & PLUS, then it only enough to pay the following details and there is still a shortfall of **$31,512.12** if you'd like to ship 800pcs BIOZOOM PLUS.

| PO# | ITEM DES. | PAYMENT% | QTY | UNIT PRICE | TOT |
|---|---|---|---|---|---|
| 20ADD#C3 | Trio | 100% | 1584 | US$6.48 | US$ |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 3640 | US$44.30 | US$ |
| 20ADD#C24 & 26 | BIOZOOM EDGE | 100% | 1 | US$930.00 | US$ |
| 20ADD#C15 | BIOZOOM PLUS | 100% | 800 | US$62.20 | US$ |
| 20ADD#C26 | BIOZOOM EDGE | 100% | 1000 | US$44.30 | US$ |
| 21ADD#C2 | Knot Bad Gen 3 | 30% | 7500 | US$4.93 | US$ |

Meanwhile, how would you like to ship 800pcs BIOZOOM PLUS? By air or sea?
The total volume is 7.33CBM.
Please check and comment, thanks!

ERAS EVA
Thanks & Best regards
**ERAS SPORTING CO., LTD.**
TEL: 86-512-82785358 # 8019
FAX: 86-512-82785361
E-mail: sales@eras.com.tw
Please review more information from www.eras.com.tw
ERAS office will be CLOSED starting May 1 thru May 5 for Labor Day, please excuse us for not responding to your emails in a timely manner.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  15

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT



**ARTIST INT'L CO., LTD.**
60 Market Square, P.O. Box 364, Belize City, Belize
Tel: 886-2-2507-7872; Fax: 886-2-2507-7029

## Sales Confirmation

| To: | | Date: | 18/Nov/20 |
|-----|-----|-----|-----|
| Addaday Inc. | | PI# | 20ADD#C29 |
| 2500 Broadway F125, Santa Monica, | | Tel: | 310-905-2737 |
| CA90404, USA | | Fax: | |

| | | |
|-----|-----|-----|
| SHIPMENT: | around 2 weeks after payment is received. | |
| SHIP FROM: | Ningbo | China |
| TO: | Los Angeles | USA |
| PAYMENT: | T/T 90 DAYS | |

| | Item No. | DESCRIPTION | Product Picture | QUANTITY | US$/UNIT | AMOUNT |
|-----|-----|-----|-----|-----|-----|-----|
| | | | | PCS | FOB | US$ |
| 1 | BIOZOOM PLUS CASE | | | 72 | 4.3 | US$309.60 |
| | Packing: 1pc/single carton | | | | | |
| | 4pcs/master carton | | | | | |
| | **TOTAL:** | | | 72 | PCS | US$309.60 |

SAY TOTAL: U.S. DOLLARS THREE HUNDRED AND NINE AND CENTS SIXTY ONLY.

Remarks: If the total amount per shipment is less than US$ 6,000, handling charge US$200 is needed!

*If there are any quality problems, the Buyer should bring forward the complaint within 30 days after receiving cargo and offer specific description on quality defects and evidences such as pictures. Otherwise it will be regarded that the Buyer gives up his quality opposition rights.

*When there is quality dispute on certain batch of products, both parties agree that handling of these products will not affect dealing of other batches of products. The Buyer cannot countervail, without the Seller's permission, the payment of products which may have quality problem with payment of other batches.

All disputes in connection with this contract or the execution thereof shall be settled by negotiation between two parties. If no settlement can be reached, the case in dispute shall then be submitted for arbitration in US. The decision made by the arbitration organization shall be taken as final and binding upon both parties. The arbitration expenses shall be borne by the losing party unless otherwise awarded by the arbitration organization.

**\*\*\* SHIPPING MARK \*\*\***                     Please advise!!!

Accepted & Confirmed by
Addaday Inc.


Victor Yang


ARTIST INT'L CO., LTD.

For and on behalf of
ARTIST INT'L CO., LTD.


Authorized Signature

Fax: 0086-512-8278-5361

1 of 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  16

**ARTIST INT'L CO., LTD.**
60 Market Square, P.O. Box 364, Belize City, Belize
Tel: 886-2-2507-7872; Fax: 886-2-2507-7029

## Sales Confirmation

| | |
|---|---|
| To: | Date: 16/Apr/21 |
| Addaday Inc. | PI# 21ADD#C2 |
| 2500 Broadway F125, Santa Monica, | Tel: 310-905-2737 |
| CA90404, USA | Fax: |

| | | |
|---|---|---|
| SHIPMENT: | 70 DAYS AFTER 30% DEPOSIT | |
| SHIP FROM: | Shanghai | China |
| TO: | Los Angeles | USA |
| PAYMENT: | T/T 90 DAYS | |

| Item No. | DESCRIPTION | Product Picture | QUANTITY | US$/UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | | PCS | FOB | US$ |
| 1  EG0066-51 [Featherweight foam roller large] | EPP yoga roller<br>Material: EPP<br>Size around: 33 x 14 x 14cm<br>Packing: 1 PC/Poster<br>12 PCS/CTN/3.24 cu'ft<br>N.W./G.W.: 1.5/2.2 KG |  | 2004 | US$3.31 | US$6,633.24 |
| 2  EG0180-13 [Round Chucks] | Round Chucks<br>Material: Rubber<br>Diameter: 7.2cm<br>Hardness: 50<br>Ball with logo printing<br>Packing: 1 PR/mesh bag + tube with hanger<br>12 PRS/CTN/0.57 cu'ft<br>N.W./G.W.: 3.1/4.0 KG |  | 3000 | US$7.28 | US$21,840.00 |
| 3  EG0070-36 [Pro Roller] | Massage stick<br>Material: PP + TPE +iron<br>Big massage ball dia. About: 5cm<br>Length: 52.5cm<br>Packing: 1 PC/hang tag with magnetic<br>25 PCS/CTN |  | 2000 | US$5.99 | US$11,980.00 |
| 4  EG0146-36 [Footy] | Massage ball<br>Material: PVC<br>Diameter: 5cm<br>With 1pc logo<br>Packing: 1 PC/Card<br>150 PCS/CTN |  | 2100 | US$0.88 | US$1,848.00 |
| 5  EG0063-11 [Nonagon] | Nonagon - Blue<br>EVA material<br>Size: 11.5 x 33cm<br>Inner shape: enneagon<br>with 2pcs logo on both ends<br>Packing: 1PC/color sleeve<br>6 PCS/CTN 1.46 cu'ft<br>N.W./G.W.: 3/4 KG |  | 2004 | US$6.99 | US$14,007.96 |
| 6  EG0071-36 [Peanut] | PVC peanut ball<br>Material: PVC<br>Size around: 6.5 x 6.5 x 14cm<br>With 1pc logo<br>Packing: 1 PC/Card<br>24 PCS/CTN/0.59 cu'ft<br>N.W./G.W.: 3.84/4.5 KG |  | 2016 | US$1.40 | US$2,822.40 |
| 7  EG4960-36 [Knot Bad 3] | Knot Bad Gen 3<br>Material: Nylon/Fiberglass<br>Size: 58.5 x 40.5 x 1.85 cm<br>With TPR covered<br>Packing: 1pc/Hang tag + Logo hook<br>10pcs/ctn/1.23cu'ft<br>N.W./G.W.: 4.0/4.8 KG |  | 7500 | US$4.93 | US$36,975.00 |

**ARTIST INT'L CO., LTD.**
60 Market Square, P.O. Box 364, Belize City, Belize
Tel: 886-2-2507-7872; Fax: 886-2-2507-7029

## Sales Confirmation

| | |
|---|---|
| To: | Date:  16/Apr/21 |
| Addaday Inc. | PI#  21ADD#C2 |
| 2500 Broadway F125, Santa Monica, | Tel:  310-905-2737 |
| CA90404, USA | Fax: |

SHIPMENT:   70 DAYS AFTER 30% DEPOSIT
SHIP FROM:   Shanghai        China
TO:          Los Angeles     USA
PAYMENT:     T/T 90 DAYS

| Item No. | DESCRIPTION | Product Picture | QUANTITY | US$/UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | | PCS | FOB | US$ |
| TOTAL: | | | 20624 | PCS | US$96,106.60 |

SAY TOTAL: U.S. DOLLARS NINETY SIX THOUSAND, ONE HUNDRED AND SIX AND CENTS SIXTY ONLY.

**Remarks: If the total amount per shipment is less than US$ 6,000, handling charge US$200 is needed!**

 *If there are any quality problems, the Buyer should bring forward the complaint within 30 days after receiving cargo and offer specific description on quality defects and evidences such as pictures. Otherwise it will be regarded that the Buyer gives up his quality opposition rights.

 *When there is quality dispute on certain batch of products, both parties agree that handling of these products will not affect dealing of other batches of products. The Buyer cannot countervail, without the Seller's permission, the payment of products which may have quality problem with payment of other batches.

 All disputes in connection with this contract or the execution thereof shall be settled by negotiation between two parties. If no settlement can be reached, the case in dispute shall then be submitted for arbitration in US. The decision made by the arbitration organization shall be taken as final and binding upon both parties. The arbitration expenses shall be borne by the losing party unless otherwise awarded by the arbitration organization.

**\*\*\* SHIPPING MARK \*\*\***          Please advise!!!

Accepted & Confirmed by                              ARTIST INT'L CO., LTD.
Addaday Inc.

_____                  _____
Addaday, Victor Yang CEO                  Authorized Signature
April 16, 2021                            Fax: 0086-512-8278-5361

2 of 2

1

## <u>CERTIFICATION OF SERVICE</u>

2      The under signed attorney certifies that copies of the foregoing

3  **DECLARATION OF LIN "EVA" CHEN IN SUPPORT OF APPLICATION**

4  **FOR RIGHT TO ATTACH ORDER AND AN ORDER FOR ISSUANCE**

5  **OF A WRIT OF ATTACHMENT** was served upon all parties who have

6  appeared on March 28, 2022.

7

8                                    /s/ Hubert Kuo_____
                                    Hubert H. Kuo

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND
WRIT OF ATTACHMENT