Hubert H. Kuo (SBN 204036)
    hkuo@ardentlawgroup.com
Jennifer C. Berschauer (SBN. 203977)
    jberschauer@ardentlawgroup.com
ARDENT LAW GROUP, P.C.
4340 Von Karman Ave., Suite 290
Newport Beach, CA 92660
Tel: (949) 299-0188
Fax: (949) 299-0127

Attorneys for
Defendants/Counterclaimants ARTIST
INTERNATIONAL CO., LTD., and ERAS
SPORTING CO., LTD., Defendants LI-
WEI HOU, and LI-MING HSU

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADDADAY, INC., a Delaware corporation, and VICTOR YANG, an individual<br><br>Plaintiffs,<br><br>v.<br><br>ARTIST INTERNATIONAL CO., LTD., a foreign corporation, ERAS SPORTING CO., LTD., a foreign corporation, SUZHOU AIDISITE TRADING CO., LTD., a foreign corporation, LI-MING HSU, an individual, LI-WEI HOU, an individual, HUNG-WEN CHEN, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>**AND ALL RELATED CROSS-CLAIMS** | Case No. 2:21-cv-05525-AB (PLAx)<br>Assigned for all purposes to:<br>Hon. Judge Andre Birotte Jr.<br>Courtroom 7B<br><br>**COUNTERCLAIMANTS' REPLY TO VICTOR YANG'S OPPOSITION TO APPLICATION FOR WRIT OF ATTACHMENT**<br><br>**Hearing:**<br>**Date: May 11, 2022**<br>**Time: 10:00 a.m.**<br>**Courtroom 780**<br><br>*[Filed concurrently with Declaration of Caixing Ma; Declaration of Yi-Bi Lin; and Counterclaimants' Evidentiary Objections to Declaration of Victor Yang]* |

COUNTERCLAIMANTS' REPLY TO VICTOR YANG'S OPPOSITION TO APPLICATION FOR WRIT OF ATTACHMENT

**TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………...1

II. ARGUMENT………………………………………………………………...1

    1. Counterdefendant Is Not Entitled to an Offset…………………………...1

        A. The Failed Claims and Defenses Upon Which Counterdefendants Seek an Offset…………………………………2

    1. Allegedly Defective Products……………………………………………2

    2. Alleged "Unlawful Seizure" of Products by ICB…………………...6

    3. Addaday Authorized Use of the Addaday Mark…………………8

        B. Counterclaimant Fails to Present Any Admissible Evidence to Justify the Offset……………………………………………9

        C. Counterclaimant's Offset Claims Cannot be Ascertained…………………………………………………………9

    1. Yang Fails to Present Any Meaningful Challenges to the Writ……………………………………………………………………..10

    2. Yang's Request for an Undertaking of $4 million or $5 million Is Equally Spurious as It Is Based on the Same Unreliable Self Serving Declaration Without Any Evidentiary Support……………………………………………………………..11

IV. CONCLUSION ……………………………………………………………12

# TABLE OF AUTHORITIES

## Cases

*Estate of Williamson*
    150 Cal.App.2d 334, 310 (1957) …………………………………………..12

*Hobbs v. Weiss,*
    73 Cal.App.4th 76, 79 (1999)…………………………………………..5, 9

*Kashian v. Harriman*
    98 Cal.App.4th 892, 920 (2002)………………………………………….7

*Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.,*
    112 F.Supp.2d 1178, 1182-83 (C.D. Cal. 2000)……………………………..1

*Silberg v. Anderson*
    50 Cal.3d 205, 212 (1990)………………………………………………...7

*Woodruff v. Maryland Casualty Co.,*
    140 Cal. App. 642 (1934)…………………………………………………..11

## Federal Rules

Fed. Rules Evid. 602…………………………………………………………..9
Fed. Rules Evid. 701(c)………………………………………………………..9
Fed. Rules Evid. 702 (c) ………………………………………………………9
Fed. Rules Evid. (801)………………………………………………………...9

## California Code of Civil Procedure

California Code of Civil Procedure, Section 483.010 …………………………...5, 9
California Code of Civil Procedure, Section 483.015(b)(2)………………..………1
California Code of Civil Procedure, Section 484.090(a)………………………...7, 9

## I. INTRODUCTION

Counterdefendant Victor Yang's ("Yang" or "Counterdefendant") Opposition fails to raise any noteworthy challenges to the Writ. It is most notable for what it does not contain - any justification for Yang's failure to adhere to the terms of the agreements and promissory notes identified in the moving papers.

Instead of responding to the straightforward arguments set forth in the Writ, Yang attempts to distract the Court by claiming in ambiguous fashion that it is entitled to millions of dollars' worth of offsets. Yang fails to meet the strict requirements essential to maintain his claim for offsets. Because of numerous faults in his efforts to obtain an offset, offset claims must fail. These faults include a striking lack of evidence by Yang, in contrast with well-documented agreements and other evidence submitted by Counterclaimants Artist and Eras ("Counterclaimants"), a failure to identify a fixed or readily ascertainable amount as to which he seeks his offsets, failure to demonstrate the offset is one on which an attachment may issue, and a failure to show "probable validity" of his claim.

Lacking any solid argument to defeat the Writ, Counterdefendant focuses this Court's attention on offsets, none of which have merit, all of which must be denied.

## II. ARGUMENT

### 1. Counterdefendant Is Not Entitled to an Offset

To establish the merit of an offset against an amount sought by a writ of attachment, the party opposing the writ has a high evidentiary burden. Under California Code of Civil Procedure, Section 483.015(b)(2), a defendant must provide enough evidence to establish a *prima facie* case of prevailing on its claims. Furthermore, since an offset is adjudged by the same standard as the writ, the opposing party must establish the offset amount is itself "one upon which an attachment could be issued." *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.,* 112 F.Supp.2d 1178, 1182-83 (C.D. Cal. 2000).

Counterdefendant goes to great lengths to muddy the waters and convince

this Court they are entitled to an offset. Their efforts in this regard must fail. None of Yang's claims or defenses as to which he seeks an offset are supported by fact or law, nor can he establish 'probable validity' that he will prevail on the claims and defenses. Importantly, Yang presents not a shred of admissible evidence demonstrating that he is entitled to offset against the Writ, and the matters as to which Yang seeks an offset do not satisfy the requirements for obtaining a writ of attachment.

### A. The Failed Claims and Defenses Upon Which Counterdefendants Seek an Offset.

#### 1. Allegedly Defective Products

In one of multiple failed attempts to secure an offset, Yang claims he is entitled to an offset because he received defective goods. The contracts and evidence demonstrate that Yang cannot prevail on this claim and cannot establish the requisite "probable validity" that he will prevail on this claim.

Yang has failed to provide any evidence to confirm the claim that he received defective product. There was a failure to adhere to the specific terms of the Performa Invoice agreements according to which the products were shipped. *See, Declaration of Yi-Bi Lin*, ("Lin Decl."), filed concurrently herewith, ¶ 9. The parties, including Addaday on one hand, and Artist, on the other, regularly document their agreements for Addaday's purchase of product by way of Performa Invoices, also known as Sales Confirmations. *Id.*, at ¶¶ 10, 11, Ex. B. The Performa Invoice agreements between Addaday and Artist include this provision:

> "If there are any quality problems, the Buyer should bring forward the complaint within 30 days after receiving cargo and offer specific description on quality defects and evidences such as pictures. Otherwise, it will be regarded that the Buyer [Addaday] gives up his quality opposition rights." *Lin Decl.*, ¶¶ 10, 11, Ex. B.

Despite the terms of the Performa Invoice agreements, Addaday did not at any time notify Artist and Eras, in accordance with the notice requirement in the

Performa Invoice agreements, that it had received allegedly defective product. Lin Decl., ¶ 12. The evidence Addaday could have submitted to evidence defects included, among other things, pictures of defective products, documentation from retailers, return merchandise authorizations (RMA), or end user complaints. *Id.* While Addaday submitted a summary of returns, a summary of returns is not evidence of defects and is insufficient. *Id.* For example, consumers could return a product for various reasons other than being defective, such as buyer's remorse, dislike of product, price, etc. *Id.* Neither Artist nor Eras's recovery should be offset with returns. *Id.* In fact, when Addaday purchased the products, and those goods were delivered to Addaday, title to the goods transferred to Addaday, thus the risk of consumer returns is on Addaday, not the supplier.

With respect to the alleged defective massage guns, Addaday sent only two samples of allegedly defective products to Artist. *Lin Decl.*, ¶ 13. One of the two samples of allegedly defective products provided by Addaday to Artist worked and showed no sign of defect. *Id.* As to the other sample provided to Artist by Addaday, Eras replaced the product. *Id.* In fact, even though Addaday failed to comply with the inspection/reporting of defective products protocol pursuant to the Performa Invoices, Eras replaced and even sent replacement products to Addaday. *Id.*

Although required to provide notice, specific descriptions, and evidence within thirty days pursuant to the Performa Invoice agreements, Addaday failed to do so. Attorney Caixing Ma of Ardent Law Group previously communicated extensively with Addaday's former attorney, Afshin Hakim. *See Declaration of Caixing Ma, ("Ma Decl.")*, ¶¶ 3 – 8, Exs. 1-5. Commencing on May 14, 2021, after Addaday failed to make timely payments in accordance with the Stock Repurchase Agreement, the Agreement on Debt Guarantee, and Plaintiffs' Promissory Notes respective to these agreements, Mr. Ma inquired as to Mr. Hakim regarding the payment status. *Ma Decl.*, ¶ 3. In response, Mr. Hakim responded that Plaintiffs had experienced "significant returns of defective products." *Ma Decl.*, ¶ 3. Artist and

3

Eras representatives told Mr. Ma they had been requesting evidence of the defective products, but Addaday had failed to do so. *Id.* Although Mr. Hakim said he would provide to Mr. Ma *evidence* of defects, he ultimately failed to do so. *Id.*, at ¶¶ 5 – 8.

Moreover, the clear terms of the Common Stock Purchase Agreement make clear that neither Addaday nor Yang are entitled to offset for defective products. *Lin Decl.*, ¶ 11, Ex. D, ¶ 15. Specifically, the Performa Invoice agreements provide that, if there is a dispute on a batch of products in one invoice, until it is resolved, Addaday cannot use that as an excuse to offset the amount for other invoices. *Id.* The Performa Invoice agreements specifically provide:

> "When there is a quality dispute on certain batch of products, both parties agree that handling of these products will not affect dealing of other batches of products. The Buyer cannot countervail, without the Seller's permission, the payment of products which may have quality problem with payment of other batches." *Id.*

In other words, if there's a dispute on a batch of products in one invoice, until it is resolved, Addaday cannot use the dispute as an excuse to offset the amount for other invoices. Here, Yang tries to do just what he is precluded from doing pursuant to the terms of the Common Stock Purchase Agreement.

Further diminishing Counterdefendants' claims that they received "defective" products are the online reviews for Addaday's own website, Target, and REI. These reviews make clear the bulk of customers respond favorably to the products at issue, despite Counterdefendants' claim of rampant defects.

For instance, Addaday's own website shows product reviews it received for the BioZoom Edge. Lin Decl., ¶ 16, Ex. E. Addaday's online summaries for the 'BioZoom Edge', one of the products Addaday now claims was defective and for which it seeks an offset, reflect positively on the BioEdge Zoom. *Id.* Addaday's own website shows the 'BioZoom Edge' received an average of four and one-half (4.5) out of five (5) stars. *Id.* Of the ninety-six product reviews, seventy-seven percent (77%) of the reviewers gave it five stars. *Id.*

COUNTERCLAIMANTS' REPLY TO VICTOR YANG'S OPPOSITION TO APPLICATION FOR WRIT OF ATTACHMENT

The Target website similarly shows positive reviews for the BioZoom Edge. Target's website reveals reviewing product users gave the BioZoom Edge an average of four (4) out of five (5) stars, with sixty-seven percent (67%) of reviewers giving the product five (5) stars. *Lin Decl.*, ¶ 17, Ex. F. The REI website also reflects favorable reviews for the BioZoom Edge. REI's website shows the BioZoom Edge received an average of four (4) out of five (5) stars for the product, fifteen (15) of the reviewers gave the product five (5) stars, and there are a total of twenty-three (23) reviews for the product. *Lin Decl.*, ¶ 18, Ex. G. Addaday, Target, and REI, continue to sell the BioZoom Edge product. *Lin Decl.*, ¶ 19.

To demonstrate entitlement to an offset, Counterdefendants must establish the "probable validity" of the claim." Cal. Code Civ. Proc., § 483.010; *Hobbs v. Weiss,* 73 Cal.App.4th 76, 79 (1999). Here, Counterclaimant has failed to present any evidence to support the claim of alleged defects and falls well below the "probable validity" standard. Yang must also demonstrate that the amount he seeks is of a fixed or readily ascertainable amount. Cal. Code Civ. Proc. § 483.010.

In one instance in the Opposition, Yang contends, "he does not owe a single cent on the promissory note for $1,491,764.70 because all the products shipped under the line of credit was defective." [ECF 69; 15:5-6]. Yet, this claim flies in the face of an email sent by Addaday's attorney, in which Mr. Hakim states that his client requests a discount of only $280,000.

Yang's contention in this regard conflicts with an email sent by his attorney Afshin Hakim on May 17, 2021. In his email, Addaday's then-counsel stated,

> "With respect to the $1,180,000 that is outstanding, I want to provide you with some background and context. …my client experienced significant returns of defective products and a material increase in cost of supplies without legitimate basis… To that end, my client is requesting a discount of $280,000 from the $1,180,000 currently outstanding. Of the $900,000 balance, they will make a good faith payment of $150,000 on or before June 7, 2021; the remainder will be paid in two traunches *[sic]* of

5

COUNTERCLAIMANTS' REPLY TO VICTOR YANG'S OPPOSITION TO APPLICATION FOR WRIT OF ATTACHMENT

$375,000 each as of October 1, and December 1, 2021."
*Ma Decl.*, ¶ 4, Ex. J.

Thus, Addaday and Yang were willing to pay at least $900,000, citing defects. Accordingly, Yang is entitled to zero offset relating to alleged defects. At the very least, Mr. Hakim's email makes clear that Counterclaimants are entitled to a Right to Attach Order of *at least* $900,000.00.

2. Alleged "Unlawful Seizure" of Products by ICB

In yet another failed attempt to muddy the water and create an offset to which they are not entitled, Counterdefendants contend that Counterclaimants improperly caused China's governmental authorities to seize its products. Notably, Counterdefendants include no evidence to support their claim in this regard and conveniently ignore the agreement that specifically identifies Eras as the exclusive supplier of products in the entire world and exclusive distributor in Taiwan and China.

The Common Stock Purchase Agreement, between Addaday and Eras, granted exclusive procurement and distribution rights to Eras. *Lin Decl.*, ¶¶ 20, 22, Ex. H. Specifically, Section 4.7 of the Common Stock Purchase Agreement provides:

> **4.7** **Exclusive Procurement.** Company[1] shall designate the Stockholder as an exclusive party who procures products with no territory restrictions.
>
> **4.8** **Exclusive Distributor in Taiwan & China.** Company shall designate the Stockholder as the exclusive distributor for all Company's products in Taiwan & China.

Despite these specific terms of the Common Stock Purchase Agreement, specifically according to which Eras had exclusive rights to procure products for Addaday and then distribute all of Addaday's products in Taiwan and China, Addaday circumvented Eras and found another supplier for Addaday. *Id.* Addaday

---

[1] The Common Stock Purchase Agreement identifies Addaday, Inc. as Company and Eras Sporting Co., Ltd. as the "Stockholder."

1  did this surreptitiously and did not notify Eras or its affiliates that it found another
2  supplier. *Id.* When Eras first became aware of the products, Eras justifiably reported
3  the incident to the authorities in China, which seized those goods. *Id.* Notably, the
4  seizure of goods is not something over which Artist or Eras has control and falls
5  within the strict determination of authorities in China.

6      At the minimum, Eras' reporting of the claim to the Chinese authorities is
7  privileged.  The litigation privilege protects conduct even if it is "alleged to be
8  fraudulent, perjurious, unethical, or even illegal." *Kashian v. Harriman* 98
9  Cal.App.4th 892, 920 (2002).  The California Supreme Court has acknowledged
10 that application of the privilege to allegedly unlawful conduct "necessarily results
11 in some real injuries that go uncompensated" but acknowledged "that is the 'price
12 that is paid for witnesses who are free from intimidation by the possibility of civil
13 liability for what they say….'" *Silberg v. Anderson* 50 Cal.3d 205, 212 (1990); see
14 *Id*. at 213 ("[t]he principal purpose of section [47(b)] is to afford litigants and
15 witnesses the utmost freedom of access to the courts without fear of being harassed
16 subsequently by derivative tort actions." (internal citations omitted). "To effectuate
17 its vital purposes, the litigation privilege is held to be absolute in nature." *Id.* At
18 215.  The litigation privilege "applies to any communication (1) made in judicial or
19 quasi-judicial proceedings; (2) by litigants or other participants authorized by law;
20 (3) to achieve the objects of the litigation; and (4) that have some connection or
21 logical relation to the action." *Silberg* at 212.  Here, the seizure of the goods in
22 China was an administrative agency, thus it surely qualifies under the broad
23 confines of the litigation privilege.

24     It is Yang and Addaday, not Eras or Artist, that breached the agreement,
25 which called for Artist and Eras to be exclusive supplier and manufacturer. Yang
26 has failed to present any evidence that it is more likely than not to prevail on this
27 claim, particularly in light of the clear terms of the agreement. *See* Cal. Code. Civ.
28 Proc., § 484.090(a), requiring party to demonstrate probable validity of a claim.

Given the above deficiencies in his claim, Yang cannot demonstrate a fixed or readily ascertainable amount as to which he seeks offset.

### 3. Addaday Authorized Use of the Addaday Mark.

Neither Eras nor Artist improperly used or stole any Addaday marks, and as to this claim like the others, there is no basis for an offset. In fact, **Addaday specifically authorized Eras and Artist to use the Addaday mark**. *Lin Decl.*, ¶ 4, 5, 6, Exs. A, B. Eras and Artist used the mark only in accordance with the authorizations, the terms of which are set forth below. *Lin Decl.*, ¶ 4.

Specifically, on April 18, 2019, Addaday authorized Artist's China affiliate, Suzhou Artist Fitness Trading Co., Ltd., to use the "addaday" trademark in the Asian region. *Lin Decl.*, ¶ 4, Ex. A. The "Brand Authorization Letter," signed by Victor Yang on behalf of Addaday and dated April 18, 2019, provides that Addaday LLC is the legal holder of the trademark addaday and the associated logo. *Id.* The Brand Authorization Letter specifically authorizes Artist's affiliate to use the trademark 'addaday' in the Asian region. *Id.*

In addition, on or about September 16, 2019, Addaday signed the "Certification of Authorization of Eras Sporting Co., Ltd." ("Certification"), *Lin Decl.*, ¶ 7, Ex. C. Importantly, the Certification specifically authorized Eras Sporting Co., Ltd. to:

> "manufacture, distribute, and sell the co-branded Addady/IRONMAN BioChair massage chairs (the "Merchandise"), to include Addaday's 'IRONMAN ®' and the 'M-DOT' logo trademark, on Eras merchandise and/or packaging, marketing materials, product labels or tags, and to sell merchandise within the United States.

*Lin Decl.*, ¶ 7, Ex. C.

Artist and Eras acted at all times within the parameters of the Brand Authorization Letter and Certification of Authorization of Eras Sporting Co., Ltd. Neither Artist nor Eras purloined Addaday's trademarks, nor did they sell

8

counterfeit goods as they were specifically authorized to procure and distribute Addaday's goods. *Lin Decl.*, ¶ 8.

Again, given the clear terms of the agreement authorizing use of the mark by Artist and Eras, for which admissible evidence of the agreement is attached to the Lin Declaration, and given the absence of any evidence demonstrating actual misuse or theft of the mark by Addaday, Counterclaimants' efforts to establish a probable validity required for an offset will fail. Cal. Code Civ. Proc., § 484.090(a).

### B. Counterclaimant Fails to Present Any Admissible Evidence to Justify the Offset.

Although required to present competent evidence, stated with particularity and based on actual personal knowledge with all documentary evidence properly identified and authenticated, Yang here has failed to present any competent evidence whatsoever. *Hobbs v. Weiss* 73 Cal.App.4th 76, 79 (1999). Rather, Yang relies solely upon his self-serving declaration prove the offsets.

The Declaration of Victor Yang, filed concurrently with his Opposition to Counterdefendants' Application for Writ of Attachment, is woefully deficient. It lacks proof to support claims asserted in the declaration. The statements made by Yang are largely conclusory, lack foundation, hearsay, speculative, amount to improper lay opinion and are generally unreliable, in violation of Federal Rules of Evidence, Rules 602, 701(c), 702(c), and 801. *See, Counter Claimants' Evidentiary Objections to the Declaration of V. Yang,* filed concurrently herewith.

### C. Counterclaimant's Offset Claims Cannot be Ascertained.

For an attachment to issue, or an offset, the claim sued upon must be a fixed or readily ascertainable amount. Cal. Code Civ. Proc. § 483.010. Here, as to each of the claims set forth above, given the lack of admissible evidence presented by Yang, and further given that Yang cannot establish "probable validity" of his alleged offsets, the proposed offsets must fail as a matter of law. Given the deficiencies in his claim, and specifically a lack of entitlement to offsets

9

COUNTERCLAIMANTS' REPLY TO VICTOR YANG'S OPPOSITION TO APPLICATION FOR WRIT OF ATTACHMENT

whatsoever, he cannot possibly identify a fixed or readily ascertainable amount for the claims and defenses as to which he seeks offset. While Yang includes a multitude of numbers as to which he claims he is entitled to an offset, there is no evidence to support these numbers. Even worse, Yang contends that the amounts he seeks are "approximate," or were "estimated" rendering entirely without merit Yang's claim that the amount sought for his offset is ascertainable. (*Yang Decl.* ¶¶22,26)

Furthermore, Yang's offset claims are not based upon a contract, express or implied. Yang claims that he is entitled to damages totaling over $3 million, but none of these are based on an express or implied contract, but rather on a supposed tort theory for damages to its reputation, not supported by any admissible evidence.

### 1. Yang Fails to Present Any Meaningful Challenges to the Writ.

Although much ado is made of Yang's failed claims for offset, this is done in an apparent attempt to deflect from the lack of defense to the Writ itself. Yang fails to present any evidence or arguments from which one could infer that Counterclaimant is not entitled to a Right to Attach Order. In fact, with the exception of the self-serving and insufficient Yang Declaration, Yang presents absolutely no evidence to support his claim.

As to his argument that the claim must fail because the claim is not fixed or ascertainable, this claim misses the mark. The moving papers make clear the agreements according to which Counterclaimant seeks a Writ identify clearly the amounts at issue. Yang contends because the amount of its offsets is unclear, Counterclaimants may not recover pursuant to the Writ. Given the faults in the claim regarding "defective" products, Yang's claim in this regard lacks merit entirely. Yang cannot establish that he is entitled to offset for defects. His claim that an offset for defective products renders the amount sought "unascertainable" is disingenuous at best.

Yang's sole argument against the Writ appears to be a technical one, which

10

ignores the very basis of the arguments at issue here. Yang claims Counterclaimant failed to present evidence that it "performed or was excused from performance" under the contract. In this regard, Counterclaimant points to the "2020 Debt Guarantee and Sale of Equity Agreement" and argues that Counterclaimant failed to provide goods free from defect. This claim fails because Yang failed to produce any evidence Counterclaimant produced defective product. This claim also fails because the evidence demonstrates that if Counterclaimant had produced defective goods, a procedure existed to require the recipient of defective goods to provide notice and evidence of such defects. Notably, Yang does not contend that Counterclaimants failed to provide products. For these reasons, this claim fails.

### 2. Yang's Request for an Undertaking of $4 million or $5 million Is Equally Spurious as It Is Based on the Same Unreliable Self Serving Declaration Without Any Evidentiary Support.

As with Yang's unreliable and inadmissible claims for his purported damages, Yang wants this court to impose a $4 million or $5 million bond (depending on what section of Yang's opposition brief to be believed) as a requirement for the issuance of the right to attach order. Yang's contention is once again based on his unsupported declaration that he could sustain damages over $3 million. It bears to underscore the fact that none of Yang's assertion are supported by any evidence other than his conclusory and inadmissible statements. Yang fails to provide an iota of documentary evidence to support he speculative damages.

The most direct and immediate purpose of an attachment bond is that the owner of property shall be protected against seizure of his property at the instance of a plaintiff who has sued **without a valid claim** against the defendant. *Woodruff v. Maryland Casualty Co.*, 140 Cal. App. 642 (1934). Here, as set forth in Counterclaimants' moving papers, which are supported by fully executed agreements, the Counterdefendants breached their simple duty to pay for the goods that they received. On the other hand, Counterdefendants' remaining claims are not

11

supported by any admissible evidence and are purely speculative. There is simply no reason to increase the amount of the undertaking to an astounding $4 or $5 million based purely on Yang's unreliable and self-serving statements.

Aside for the speculative nature of Yang's damages, he also seeks the addition of the *entirety* of his attorney's fees as part of his request to increase the amount of the undertaking. Yang forgets that he is the "plaintiff" as initiated this lawsuit and attorney's fees can only be included as a factor if they are related to the defense of the attachment. *Estate of Williamson* 150 Cal.App.2d 334, 310 (1957). Based on the complete lack of reliable evidence, the amount of Counterclaimants' undertaking should remain at the statutory minimum of $10,000.

## IV.     CONCLUSION

The Court should grant Artist and Eras's application and issue a right to attach order against Counterdefendant for $1,370,559.70.

Dated:  May 9, 2022                                         ARDENT LAW GROUP, P.C.

                                                            By:   */s/ Hubert Kuo*
                                                                  Hubert Kuo
                                                                  Jennifer C. Berschauer
                                                                  Attorneys for
                                                                  Defendants/Counterclaimants ARTIST INTERNATIONAL CO., LTD., and ERAS SPORTING CO., LTD.,
                                                                  Defendants LI-WEI HOU, and LI-MING HSU

## CERTIFICATION OF SERVICE

The under signed attorney certifies that copies of the foregoing **COUNTERCLAIMANTS' REPLY TO VICTOR YANG'S OPPOSITION TO APPLICATION FOR WRIT OF ATTACHMENT** was served upon all parties who have appeared on May 9, 2022.

*/s/ Hubert Kuo*________________
Hubert Kuo